FREDERICK LEYLAND & CO., Limited, v. WEBSTER BROS. & CO.   (No. 9695.)*

(Court of Civil Appeals of Texas. Dallas. Feb. 6, 1926. Rehearing Denied April 3, 1926.)

1. Appeal and error ⬅➡863—On appeal from order denying motion to dissolve temporary injunction only question reviewable is whether refusal to dissolve injunction was error.

On appeal from order denying motion to dissolve temporary writ of injunction, only question reviewable is whether trial court erred in refusing to dissolve injunction.

2. Injunction ⬅➡136(2)—General creditor, asserting claim not reduced to judgment, cannot restrain debtor from disposing of his property pending action.

General creditor, asserting unsecured claim not reduced to judgment, cannot restrain debtor from selling, removing, or disposing of his property at his own pleasure pending common-law action.

3. Carriers ⬅➡76—Shippers who delivered cotton to carrier for shipment to foreign country on through order bills of lading held not entitled to enjoin carrier from transporting it to destination without first surrendering bills of lading to carrier, or enjoining their negotiation (Federal Bills of Lading Act Aug. 29, 1916, §§ 3, 11, 14, 23, 24, 30 [U. S. Comp. St. §§ 8604b, 8604f, 8604gg, 8604l, 8604ll, 8604oo]).

Under federal Bills of Lading Act Aug. 29, 1916, §§ 23, 24 (U. S. Comp. St. §§ 8604l, 8604ll) and, in view of sections 3, 11, 14, 30, (sections 8604b, 8604f, 8604gg, 8604oo), shippers who delivered cotton to carriers for shipment to foreign country on order bills of lading, which they attached to drafts and cashed at bank, could not enjoin carrier from transporting it to destination, where bills of lading were not first surrendered to carrier, or their negotiation enjoined; remedy by injunction, provided by section 24, being limited in operation against bills of lading.

4. Carriers ⬅➡51—Federal Bills of Lading Act was enacted to make bill of lading take place of goods shipped so that goods would be emancipated from rules of procedure interfering with its transportation (federal Bills of Lading Act, §§ 3, 11, 14, 23, 24, 30 [U. S. Comp. St. §§ 8604b, 8604f, 8604gg, 8604l, 8604ll, 8604oo]).

Federal Bills of Lading Act, in view of sections 3, 11, 14, 23, 24, 30 (U. S. Comp. St. §§ 8604b, 8604f, 8604gg, 8604l, 8604ll, 8604oo), was intended to make bill of lading not only

---

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction in 283 S. W. 1071.

represent title, but take place of goods for which it was issued, so that goods should be emancipated from all rules of procedure interfering with its transportation.

Appeal from District Court, Dallas County; T. A. Work, Judge.

Suit by Webster Bros. & Co., a corporation, against Frederick Leyland & Co., Limited, and others. From an order denying its motion to dissolve a writ of temporary injunction, the defendant named appeals. Reversed and rendered.

W. B. Hamilton, of Dallas, and Mart H. Royston, of Galveston, for appellant.

W. H. Reid and J. W. Bailey, both of Dallas, for appellee.

VAUGHAN, J. Two propositions are before us in support of this appeal presenting appellant's disagreement with the trial court's construction of the Act of Congress of August 29, 1916 (U. S. Comp. St. §§ 8604aaa–8604w), known as the "Bills of Lading Act," and referred to by text-writers as the "Uniform Bill of Lading Act," to wit, sections 23 and 24 of said act, in determining the right of a general creditor to enjoin the movement of certain cotton under a bill of lading issued by a common carrier for its transportation from a place in the state of Texas to a place in a foreign country, to wit, from Galveston, Tex., to Liverpool, England. Therefore a general discussion will suffice.

On May '13, 1925, the appellee, Webster Bros. & Co., a corporation, instituted its suit in the court below against T. W. Livesey, D. D. Livesey, International Mercantile Marine Company, T. and J. Harrison, a copartnership, United Gulf Steamship Company, Inc., United States Shipping Board, and Frederick Leyland & Co., Limited, alleging that during the cotton season of 1924–1925 appellee shipped and sold to defendants Livesey Bros., at Liverpool, England, about 70,000 bales of cotton under various contracts of purchase, whereby the said cotton was purchased by Livesey Bros. from appellee at given prices according to the grade thereof, and that appellee also shipped to Livesey Bros. about 1,580 bales of cotton under consignment; and, on account of the cotton handled by them under consignment, Livesey Bros. became indebted to appellee in the sum of approximately $10,000; that on or about April 22, 1925, Livesey Bros., by cablegram, demanded of appellee that it remit to them 1,000 pounds, or approximately $5,000 in cash, on account of the debt claimed by Livesey Bros. to be due them by appellee on account of said cotton shipments; that on April 29, 1925, Livesey Bros. cabled appellee that, unless said amount of 1,000 pounds was remitted, they would refuse to protect the drafts under which cotton sold by appellee to said Livesey Bros. was shipped or in process of shipment from appellee to said Livesey Bros.; that, although, according to

statements between appellee and said Livesey Bros., they were indebted to appellee at that time in the sum of approximately $23,500, yet appellee was unable to secure from said Livesey Bros. any statement of "out-turns" of said cotton or any statement of the account between appellee and said Livesey Bros.; that said Livesey Bros. refused to furnish appellee any statement of the indebtedness so claimed by Livesey Bros.; and that, in order to protect the drafts then in process of collection covering approximately 300 bales of cotton, and to protect appellee's credit and standing, appellee was compelled to make said deposit to the credit of Livesey Bros. with the Guaranty Trust Company of New York; that on May 9, 1925, said Livesey Bros. sent a cablegram to appellee refusing to accept drafts for cotton then in process of shipment by appellee, amounting to approximately 300 bales, unless appellee would pay the further sum of 2,000 pounds to Guaranty Trust Company of New York by draft the following Monday, May 11, 1925, and on May 12, 1925, said Livesey Bros. further advised appellee that they would not accept any drafts unless the foregoing remittance of 2,-000 pounds was made; that appellee delivered for shipment to Frederick Leyland & Co., Limited, several different lots of cotton on the following dates: At Galveston, Tex., April 17, 1925, 17 bales of cotton marked DUAS/WBSTR under custody bill of lading No. 58; on April 4, 1925, 15 bales of cotton marked WAXA/WBSTR under Waxahachie, Tex., MK&T Ry. bill of lading F–1190; on April 15, 1925, 52 bales of cotton marked LPAD/WBSTR, under Paducah, Tex., Quanah, Acme & Pacific Ry. Co. bill of lading F–47; and that it delivered the following lots of cotton to the United Gulf Steamship Company, Inc.: On April 23, 1925, 17 bales of cotton marked HERM/WBSTR, under custody bill of lading No. 223; and on April 16, 1925, 19 bales of cotton marked HERM/WBSTR, under Sherman, Tex., H&TC Ry. Co. bill of lading of said date; and that all of said cotton was, at the time of filing of suit, in the possession of the defendants. It is further alleged that the defendants T. W. Livesey, D. D. Livesey, and Livesey Bros. were, each and all, indebted to plaintiff in the sum of $28,500, in which amount plaintiff alleged that it was actually damaged, and prayed for the additional sum of $50,000 exemplary damages on account of the injury to plaintiff's credit and standing as a cotton firm, against the Liveseys, but no debt is alleged against, and no recovery is sought as to, the other defendants who are common carriers to whom the cotton had been delivered and by whom the cotton had been delivered, and by whom bills of lading were issued therefor.

Plaintiff further alleged that it was entitled to an equitable lien upon and against all of the cotton above described, by reason of the alleged indebtedness so owing to plain-

tiff by defendants Livesey Bros., D. D. Livesey, and T. W. Livesey, and that plaintiff was entitled to have said cotton seized and sold under the orders of the court to satisfy any judgment which plaintiff might recover against said defendants; and prayed for judgment against the said Liveseys, individually and as a firm, for its debt and damages in the sum of $28,500 as actual damages, and $50,000 as exemplary damages, and prayed that the court issue its temporary writ of injunction restraining and enjoining defendants and each of them (naming all of the defendants) 'from shipping, moving, or removing any of the 84 bales of cotton, and from delivering or turning over any of the said cotton to said T. W. Livesey, D. D. Livesey, or Livesey Bros., or to any one else for them or any of them, pending the further orders of the court; and that upon final hearing injunction be made permanent, and the cotton ordered sold by the court upon final judgment to satisfy any and all indebtedness of said defendants, or any of them, for which any judgment or recovery might be awarded to plaintiff, and for general and special relief. The temporary writ of injunction as prayed for was granted on the 13th of May, 1925, and was duly issued against all of the defendants on May 14, 1925, and served on Frederick Leyland & Co. on May 15, 1925, and said defendant, on July 25, 1925, answered, under oath, among other things setting up that plaintiff's bill was without equity, and that the plaintiff was not entitled to the injunction against it, for that it was a common carrier engaged in interstate and foreign commerce, and that the 84 bales of cotton described in plaintiff's petition as delivered were delivered to it as a common carrier for the purpose of being by it transported to Liverpool, England, and there to be delivered to the owner and holder of the bills of lading upon the surrender thereof, and that said cotton was still in the possession of said Frederick Leyland & Co., Limited, as a common carrier, and alleging that it did not have possession of, and had nothing to do with, any of the cotton, except the 84 bales described in the three shipments of 17, 15, and 52 bales, for which it had issued shipper's order bills of lading; that said bills of lading had never been surrendered to it, nor had same been impounded by any court; and that the property described in said bills of lading must, by the terms thereof, be delivered by Frederick Leyland & Co., Limited, to the owner and holder of said bills of lading; and that, unless said bills of lading be surrendered or impounded by the court, the goods described therein could not be attached by garnishment or otherwise, or be levied upon under execution; and that under and by virtue of the act of Congress of the United States known as Act August 29, 1916, c. 415, §§ 23 and 24 (U. S. Comp. St. §§ 8604l, 8604ll), the property described in plaintiff's petition as being in the possession of said defendant Frederick Leyland & Co., Limited, was not subject to the orders of the court.

Appellant, after the filing of its answer under oath, filed its motion on October 2, 1925, presenting eleven grounds for the dissolution of said injunction, of which grounds it is only necessary, in the disposition of this appeal, to discuss the seventh and ninth, viz.:

"Seventh. The said defendant alleged that it was a common carrier of goods, wares, and merchandise, including cotton, and is and was engaged in interstate and foreign commerce, operating steamships between the ports of Texas and the ports of foreign countries, and particularly between the port of Galveston, Tex., and the port at Liverpool, England; that it issued its bills of lading upon the application and at the request of plaintiff, for the 84 bales of cotton delivered to this defendant, and that said bills of lading were delivered to the plaintiff, and the plaintiff attached drafts to said bills of lading, and negotiated the same by sending through various banks to the city of Liverpool, and that said bills of lading are outstanding and are known as order bills of lading, said cotton having been shipped by plaintiff as shipper to its own order at Liverpool, England, notify Livesey Bros., and that said bills of lading represent a liability of this defendant to the holders thereof; and that said bills of lading have never been returned to this defendant or delivered to it, but are still outstanding, and that said bills of lading have not been impounded by this court, and, by reason of these facts, the injunction should be dissolved."

"Ninth. Because the court will not be authorized under the law, under any rule of equity, or under the statutes of Texas, to continue said injunction in force; and

"'Because the defendant being a common carrier in possession of said cotton, and said cotton being in course of transportation from Texas to Liverpool, England, and said shipment having originated in the state of Texas, the defendant is entitled to have this injunction dissolved.'"

After the injunction had been issued and served, appellee, on the 5th day of September, 1925, sued out a writ of attachment, and caused writs to be issued to Galveston and Harris counties, and levied by the sheriffs of said counties respectively on the cotton impounded by said writ of injunction. Therefore, at the time of the filing and hearing of appellant's motion to dissolve the temporary writ of injunction, the cotton in question was not in the hands of appellant, but had been taken out of its possession and was in the hands of the respective sheriffs of Harris and Galveston counties.

[1] This being an appeal from an order denying a motion to dissolve a temporary writ of injunction, no other question is presented to, or can be considered by, this court than the one, viz. whether or not the trial court erred in refusing the prayer of appellant's motion to dissolve. Therefore the attachment proceedings contained in the tran-

script of the record anent the issuance and levy of writ of attachment on the cotton involved, after said writ of injunction had been issued and served, will not be commented upon, as same is not before this court for any purpose.

On the hearing of the motion, evidence was adduced by which the following material facts were established: That the writ of injunction as prayed for by appellee was granted, issued, and served, enjoining the transportation of the 84 bales of cotton by appellant from the port of Galveston to the port of Liverpool; that appellee delivered to appellant, Frederick Leyland & Co., Limited, as a common carrier, the 84 bales of cotton on the different dates and in the lots as stated in appellee's petition, and received from said appellant through order bills of lading, each bill representing cotton consigned for shipment to Liverpool, England; that they were all to shipper's order, notify Livesey Bros.; that appellee was the shipper, and had to, and did, indorse said bills of lading; that immediately, on receiving each bill of lading, appellee drew and attached a draft to each bill for an amount representing the price to be paid for the cotton for which said bill had been issued. The drafts were drawn, as directed by Livesey Bros., on the Guaranty Trust Company of Liverpool, in the usual course of business, and were drawn in the usual and customary way of dealing by appellee with Livesey Bros., that is, each draft was drawn with a bill of lading attached, same was deposited in the Southwest National Bank of Dallas, Tex., by appellee, and it took credit for the amount of the draft so drawn; that the bills of lading have never been returned to appellee or to appellant; and that the money that was passed to appellee's credit on account of said drafts and bills of lading has never been charged back to appellee; that appellee has never been notified of any protests of the draft; that none of the bills of lading relating to the 84 bales of cotton delivered to Frederick Leyland & Co., Limited, have been impounded or the negotiation of same enjoined; that Livesey Bros. conducted their business at Liverpool, England; that appellant is a common carrier, and, as such, was and is now engaged in the transportation of merchandise from places in the United States to places in England, especially Liverpool; that said bills of lading were all through bills, that is, they represented cotton consigned for shipment to Liverpool, England. As to Livesey Bros. being indebted to appellee, A. B. Webster, president of Webster Bros. & Co., Inc., testified as follows:

"It is true that I have alleged in my petition that Livesey Bros. owed me some $28,000 for which I have brought this suit, and in explanation of that I will say that I had outstanding several drafts for about 500 bales of cotton, and the market declined until they had a great deal to lose in it if they refused the draft, and they cabled me to remit them $5,000 at once or they would not pay any more drafts. When they demanded $10,000 more, which we could not send them, then we attached this cotton."

[2] The court refused appellant's motion to dissolve, and left the temporary injunction in force, from which order appellant duly perfected this appeal, and, in support of same, present the following propositions:

First. "It is contrary to the policy of the law to permit a creditor who has no judgment to go into a court of equity and restrain a debtor from selling, removing, or disposing of his property at his own pleasure, pending a common-law action."

Appellee being only a general creditor of Livesey Bros., asserting an unsecured claim which had never been reduced to judgment, this proposition is only unquestioned, but is recognized by counsel for appellee as being fundamentally correct. Therefore it will not be discussed further than to cite the following authorities supporting same: Smith's Equitable Remedies of Creditors, § 330, p. 297; Bigelow v. Andress, 31 Ill. 322; Shufeldt et al. v. Boehm, 96 Ill. 560; 2 High on Injunctions (4th Ed.) § 1403; State Bank of Chase v. Chatten, 52 P. 893, 59 Kan. 303.

[3] Second. "Appellee, Webster Bros. & Co., having sold the cotton in question to Livesey Bros., and having delivered the cotton to appellant Frederick Leyland & Co., Limited, as a common carrier for transportation from Galveston, Tex., to Liverpool, England, and having obtained from appellant, Frederick Leyland & Co., Limited, order bills of lading representing the same, and having indorsed said bills of lading and attached the same to drafts, and having cashed said drafts and taken credit for the same at the Southwest National Bank of Dallas, Tex., is prohibited by the act of Congress known as the 'Bills of Lading Act' from interfering by injunction, attachment, garnishment, or otherwise, with the free transportation of said cotton according to the contract between appellee and appellant evidenced by said order bills of lading."

This must be determined by the provisions of sections 23 and 24 of said act of Congress, viz.:

Section 23: "That if goods are delivered to a carrier by the owner or by a person whose act in conveying the title to them to a purchaser for value in good faith would bind the owner, and an order bill is issued for them, they cannot thereafter, while in the possession of the carrier, be attached by garnishment or otherwise or be levied upon under an execution unless the bill be first surrendered to the carrier or its negotiation enjoined. The carrier shall in no such case be compelled to deliver the actual possession of the goods until the bill is surrendered to him or impounded by the court.

Section 24: "That a creditor whose debtor

is the owner of an order bill shall be entitled to such aid from courts of appropriate jurisdiction by injunction and otherwise in attaching such bill or in satisfying the claim by means thereof as is allowed at law or in equity in regard to property which can not readily be attached or levied upon by ordinary legal process."

The cotton was delivered by the owner to appellant as a common carrier. Order bills of lading were issued for the cotton. Under this state of facts, the act absolutely prohibits the possession of a carrier from being disturbed by attachment, garnishment, or otherwise, or the merchandise under transportation from being levied upon under an execution without the bill of lading having been first surrendered to the carrier, or its negotiation enjoined. The bills were not surrendered to appellant, the common carrier, or the negotiation of same enjoined. Certainly that which is directly prohibited from being done by the methods and means designated in the act cannot be done indirectly by other means, to wit, writ of injunction, which would have the effect to set at naught the purpose of the act, viz. the protection of the actual possession of the cotton by the common carrier until the bill of lading is surrendered to him or impounded by the court. There is not the slightest contention that the bills issued by appellant have ever been surrendered to it or impounded by a court. The remedy by injunction provided for by section 24, supra, is limited in its operation against the bill of lading, and is prohibited from being issued in restraint of the movement or to disturb the possession of the goods represented by the bill, except as is provided for by said act. In our judgment, no other signification can be attached to the following language of said section, viz. "shall be entitled to such aid by injunction or otherwise in attaching such bill or in satisfying the claim by means thereof."

[4] No other purpose can be gleaned from the act than that it was the intention of the Congress to make the bill of lading not only to represent the title to, but to take the place of, the merchandise for which it was issued, so that the merchandise shipped should be emancipated from all rules of procedure interfering with its due course of transportation after the issuance of the bill and delivery of possession to a common carrier. If the language of said sections 23 and 24 could admit of any doubt of this construction, we think undoubtedly the following provisions of the act would remove all uncertainty in reference to this construction being in keeping with the legislative intent of the Congress:

Section 3: "That a bill in which it is stated that the goods are consigned or destined to the order of any person named in such bill is an order bill. Any provision in such a bill * * * that it is nonnegotiable shall be null and void and shall not affect its negotiability within the meaning of this act unless upon its face and in writing agreed to by the shipper."

Section 11: "That except as provided in section twenty-six, and except when compelled by legal process, if a carrier delivers goods for which an order bill had been issued, the negotiation of which would transfer the right to the possession of the goods, and fails to take up and cancel the bill, such carrier shall be liable for failure to deliver the goods to any one who for value and in good faith purchases such bill, whether such purchaser acquired title to the bill before or after the delivery of the goods by the carrier and notwithstanding delivery was made to the person entitled thereto."

Section 14: "That where an order bill has been lost, stolen, or destroyed a court of competent jurisdiction may order the delivery of the goods upon satisfactory proof of such loss, theft, or destruction and upon the giving of a bond, with sufficient surety, to be approved by the court, to protect the carrier or any person injured by such delivery from any liability or loss incurred by reason of the original bill remaining outstanding. The court may also in its discretion order the payment of the carrier's reasonable costs and counsel fees: Provided, a voluntary indemnifying bond without order of court shall be binding on the parties thereto.

"The delivery of the goods under an order of the court, as provided in this section, shall not relieve the carrier from liability to a person to whom the order bill has been or shall be negotiated for value without notice of the proceedings or of the delivery of the goods."

Section 30: "That an order bill may be negotiated by any person in possession of the same, however such possession may have been acquired, if by the terms of the bill the carrier undertakes to deliver the goods to the order of such person, or if at the time of negotiation the bill is in such form that it may be negotiated by delivery."

The section numbers of said act as herein referred to are respectively, section 3 (section 8604b), section 11 (section 8604f), section 14 (section 8604gg), section 23 (section 8604*l*), section 23 (section 8604*ll*), section 30 (section 8604oo), of the United States Compiled Statutes.

As to the application that should be given to the provisions of sections 23 and 24, supra, to the levying of the writ of attachment on the cotton involved, we make no observation, for in the condition of the record same would be but dictum.

We are of the opinion that the trial court erred in overruling appellant's motion to dissolve the temporary injunction granted in this cause, and that, by reason of this error, the judgment of the lower court should be reversed, and judgment here rendered sustaining said motion and dissolving said writ of injunction, and it is so ordered.

Reversed and remanded.