**Reverse, Render, and Remand in part; Affirm in part; Opinion Filed June 17, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00666-CV

**ALTUS BRANDS II, LLC, Appellant**
**V.**
**MICHAEL ALEXANDER, RANDY MOSELEY, AND SWORDFISH FINANCIAL, INC.,**
**Appellees**

**On Appeal from the 382nd Judicial District Court**
**Rockwall County, Texas**
**Trial Court Cause No. 1-11-654**

## OPINION

Before Justices Lang, Myers, and Brown
Opinion by Justice Lang

Appellant Altus Brands II, LLC ("Altus") filed an application for writ of garnishment in the trial court against appellees Michael Alexander and Randy Moseley to collect a foreign judgment filed in Texas (the "judgment") that awarded Altus $289,886.88 against appellee Swordfish Financial, Inc. ("Swordfish").[1] Altus contended Alexander and Moseley are liable for the full amount of its judgment previously rendered in Minnesota against Swordfish because they (1) are indebted to Swordfish in an amount in excess of $3,900,000; (2) fraudulently transferred assets of Swordfish to themselves in excess of the judgment; and (3) have "manipulated the

---

[1] Originally, Altus filed separate applications for writ of garnishment against Alexander and Moseley. Subsequently, those separate actions were consolidated with a pending action by Altus against Swordfish.

assets and liabilities of [Swordfish]" such that "equity and good conscience" require that "the corporate veil of [Swordfish] be pierced."

Following a bench trial, the trial court rendered judgment that Altus (1) "be granted the right under Section 24.008(b) of the Texas Business and Commerce Code to levy execution on that specific stock transferred in 2010 by [Swordfish] to [Alexander] and [Moseley]," *see* TEX. BUS. & COM. CODE ANN. § 24.008(b) (West 2009),[2] and (2) otherwise take nothing on its causes of action.

In three issues on appeal, Altus contends the trial court erred by (1) "declining to enter a money judgment against Defendants as provided in Tex. Bus. & Com. Code §24.009(b)"; (2) ruling that "SEC filings" in the record did not create an obligation on behalf of Alexander and Moseley to pay a $3.5 million promissory note owed to Swordfish and that the transfer of certain stock at the time that note was executed was not fraudulent as to Altus; and (3) "holding that Defendants' cancellation, after their depositions in this case, of the $3.5 million note owing to [Swordfish] . . . was neither a fraudulent transfer nor a proper basis to pierce the corporate veil of [Swordfish]." We decide in favor of Altus on its first issue. Altus's second and third issues are decided against it. We reverse the trial court's judgment in part, render judgment granting Altus a money judgment pursuant to Texas Business and Commerce Code section 24.009(b), and remand this case to the trial court for further proceedings consistent with this opinion. The trial court's judgment is otherwise affirmed.

---

[2] Pertinent to this appeal, the trial court's judgment stated, in part

> After hearing the evidence and arguments presented by counsel, and review of the briefs provided, the Court is of the opinion that Plaintiff should take nothing by this suit on its causes of action based on garnishment, and/or piercing the corporate veil. The Court is further of the opinion that Plaintiff should take nothing from the Defendants in this suit on its cause of action based on fraudulent transfer to the extent that such cause of action requests a money judgment against any defendant. However, the Court is further of the opinion that based on Plaintiff's fraudulent transfer claim brought under Section 24.006 of the Texas Business and Commerce Code, that Plaintiff should be granted the right under Section 24.008(b) of the Texas Business and Commerce Code to levy execution on that specific stock transferred in 2010 by [Swordfish] to Defendants Michael Alexander and Randy Moseley, which stock was described and identified by the evidence as being $1,255,520 in stock to Defendant Michael Alexander, and $327,520 in stock to Randy Moseley.

# I. FACTUAL AND PROCEDURAL BACKGROUND

Altus filed its application for writ of garnishment in this case on June 15, 2011. Therein, Altus asserted in part (1) Swordfish is a Minnesota corporation and (2) Alexander and Moseley are Texas residents and, respectively, the chief executive officer and chief financial officer of Swordfish. Altus requested (1) a writ of garnishment against Alexander and Moseley (the "garnishee defendants") and (2) judgment in favor of Altus against Alexander and Moseley for the amount due on the "judgment already rendered" against Swordfish, "together with interest and costs of the suit in the original case and in this garnishment proceeding." Attachments to Altus's application for writ of garnishment consisted of (1) a copy of a Minnesota judgment dated October 21, 2010, awarding Altus $289,886.88 against Swordfish and (2) an affidavit in which an attorney for Altus testified in part she has "reason to believe" Alexander and Moseley have property belonging to Swordfish or are indebted to Swordfish based on "review of the information contained in [Swordfish's] Notes to Condensed Consolidated Financial Statements (Unaudited) dated March 31, 2011 (the "CCFS"), attached hereto." The CCFS describes a 2009 transaction (the "reverse merger transaction") between Swordfish and an entity identified as "Swordfish Financial, Inc., a Texas corporation" (hereafter "Swordfish Texas" or "the Texas corporation"). Specifically, the CCFS states in part

> NOTE 1–NATURE OF OPERATIONS AND SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES
>
> NOTE RECEIVABLE–RELATED PARTY
>
> On August 14, 2009, [Swordfish] closed a Stock Purchase/Merger Agreement with [Swordfish Texas] (which is controlled by [Swordfish's] Chairman of the Board, President, Chief Executive Officer and majority shareholder) pursuant to which [Swordfish] sold an aggregate of 10,987,417 shares of its common stock in exchange for a $3,500,000 promissory note, payable in two installments of $1,750,000 each with the first installment being forty-five (45) days from the date of the note and the second installment being one-hundred twenty (120) days from the date of the note. [Swordfish] expects for the note and accrued interest to be paid by the shareholders of the Texas corporation. The note bears interest at the

rate of 5% per annum the note and the related accrued interest at March 31, 2011 was $284,375. [Swordfish] expects to collect the balance of the note and accrued interest from the stockholders of the Texas corporation.

. . . .

NOTE 9–RELATED PARTY TRANSACTIONS

**Current Officer and Director Promissory Note to Company**

On August 14, 2009, [Swordfish] closed a Stock Purchase/Merger Agreement with [Swordfish Texas] pursuant to which [Swordfish] sold an aggregate of 10,987,417 shares of its common stock in exchange for a $3,500,000 promissory note, payable in two installments of $1,750,000 each with the first installment being forty-five (45) days from the date of the note and the second installment being one-hundred twenty (120) days from the date of the note. The note bears interest at the rate of 5% per annum. As the date of this filing, no payments have been made on the promissory note and accrued interest. [Swordfish] expects to be paid in full by shareholders of the Texas corporation.

(emphasis original). Additionally, the CCFS states in part

[Swordfish] is authorized to issue 25,000,000 shares of common stock with a par value of $.16 per share. . . .

In March, 2010 [Swordfish] issued its Chief Executive Officer and Chief Financial Officer, each, 268,000 shares of restricted common stock as stock based compensation.

In July, 2010 [Swordfish] issued its Chief Executive Officer and Chief Financial Officer, each, 279,000 shares of restricted common stock as stock based compensation.

In October 2010, [Swordfish] issued its Chief Executive Officer 7,300,000 shares of restricted common stock as stock based compensation.

In October 2010, [Swordfish] issued its Chief Financial Officer 1,500,000 shares of restricted common stock as stock based compensation.

During the fourth quarter of 2010, the Company sold 1,092,000 shares of its common stock in private placements for $151,500.

Alexander and Moseley filed separate sworn answers asserting they are "not indebted in any amount to" or "in possession of any effects belonging to" Swordfish.

On October 5, 2012, Altus filed an "Affidavit Traversing and Controverting Defendants' Answers to Garnishments." In that affidavit, Brian Breneman, a "member" of Altus, testified in

–4–

part (1) defendants' filings with the United States Securities and Exchange Commission ("SEC") "represented that the shareholders of [Swordfish Texas] are Garnishee Defendants Alexander and Moseley"; (2) after execution of the $3.5 million promissory note described above (the "note"), Swordfish Texas was merged into Swordfish and the shares of Swordfish purchased by Swordfish Texas were distributed to the shareholders of Swordfish Texas; (3) defendants' SEC filings "represented that the $3.5 million note was going to be paid by 'the shareholders of the Texas corporation,' i.e., the shareholders of Swordfish Texas"; (4) "it is clear from the referenced SEC filings that Garnishee Defendants are indebted to [Swordfish] in the amount of $3.5 million plus interest"; (5) if Alexander and Moseley have no liability for repayment of the $3.5 million note described above, then "their receipt of stock in and distributions from [Swordfish] . . . was without any consideration to [Swordfish] and Plaintiff is entitled to all remedies under applicable law as a creditor of the entity which fraudulently transferred such property to Garnishee Defendants"; (6) in direct response to matters adduced at depositions of defendants held on September 21, 2012, "Garnishee Defendants executed and caused to be filed with the SEC documents purporting to, among other things, cancel the $3.5 million obligation of Swordfish Texas and Garnishee Defendants to [Swordfish] in exchange for the return to [Swordfish] of stock owned by Garnishee Defendants Alexander and Moseley with a market value of less than $110,000 at the time of the exchange"; (7) because such transaction "was engaged in by Garnishee Defendants as a ruse to avoid their personal liability to [Swordfish] and Plaintiff herein" and "together with other relevant facts, demonstrates that Garnishee Defendants have and continue to treat [Swordfish] as a mere alter ego and instrumentality of Garnishee Defendants individually," the trial court "should pierce the corporate veil of [Swordfish] and rule that the individual assets of Garnishee Defendants are immediately available for satisfaction of Plaintiff's judgment against [Swordfish]"; and (8) alternatively, the trial court should "rule that

the transaction cancelling the $3.5 million obligation of Swordfish Texas and Garnishee Defendants to [Swordfish] is an avoidable fraudulent transfer and declare it avoided, null, and void, and/or grant such other and further relief to Plaintiff as is available under applicable fraudulent transfer law."

Further, Altus filed a "Trial Brief" prior to trial. Therein, Altus further articulated its claims and contended in part (1) in addition to the fraudulent transfers alleged above, Swordfish "distributed at least $1.9 million in cash and stock to Garnishee Defendants through the end of 2011" without receiving reasonably equivalent value; (2) "these transfers are avoidable as fraudulent to the creditors of [Swordfish]"; and (3) because "[a] return of the stock transferred to [garnishee defendants], which has substantially devalued since the transfer, would not effect an equitable result," the trial court should award Altus money damages against garnishee defendants pursuant to Texas Business and Commerce Code section 24.009 "to the extent necessary to pay Plaintiff's judgment."

Trial commenced October 15, 2012. The exhibits introduced into evidence included a "Form 10-K" annual report filed by Swordfish with the SEC for "the fiscal year ended December 31, 2010" that contained a "Notes" section identical to the CCFS described above and stated in part that "other compensation" to executive officers during 2010 included (1) $1,255,520 to Alexander, which "represents 7,847,000 shares of restricted common stock issued to Mr. Alexander and valued at par value of $.16 per share" and (2) $327,520 to Moseley, which "represents 2,047,000 shares of restricted common stock issued to Mr. Moseley and valued at par value of $.16 per share." Additionally, the trial exhibits included (1) a copy of the $3.5 million note showing Swordfish Texas as the sole "maker"; (2) "Form 10-Q" reports filed by Swordfish with the SEC in 2010 and 2011 that stated in part that on December 31, 2009, 25,000,000 shares of common stock of Swordfish were authorized and 13,400,000 were "issued and outstanding";

on March 31, 2010, 25,000,000 shares of common stock of Swordfish were authorized and 13,936,000 were "issued and outstanding"; and on December 31, 2010, 25,000,000 shares of common stock of Swordfish were authorized and 24,386,000 were "issued and outstanding"; (3) a "Form 10-Q" report filed by Swordfish with the SEC in August 2012 that stated in part that Swordfish "is authorized to issue 1,000,000,000 shares of common stock with a par value of $0.0001 per share"; (4) several reports filed by Swordfish with the SEC in 2010–2012 containing the statement "[p]ursuant to the terms of the reverse merger, the equity holders of [Swordfish Texas] acquired 10,987,417 shares of common stock constituting 80% of voting control of [Swordfish] in return for a $3,500,000 note bearing interest at the rate of 5% per annum"; and (5) various other SEC filings of Swordfish that contained language identical to that in the CCFS. Further, a copy of an exhibit attached to Altus's trial brief that showed a calculation of interest on the judgment was "admitted as a summary only."

Alexander and Moseley testified at trial that they did not sign any guaranty respecting the $3.5 million note or make any representations guaranteeing that debt. Additionally, on cross-examination, Alexander was shown a portion of Swordfish's 2009 "Form 10-K" report containing language identical to that in the CCFS described above and testified as follows:

Q. You see that says Current Officer and Director Promissory Note to Company?

A. Yes, sir.

Q. Is that true or false?

A. It's true.

Further, Moseley testified in part on cross-examination as follows:

Q. Okay. Since [2009], you've acquired—well, in 2010, an additional $327,520 in stock, right, in 2010?

A. I did not get that money, no.

Q. You got stock in that value, though, right?

–7–

A. Stock that was valued at that, but it never materialized any dollars [sic].

Breneman testified as an expert witness respecting interpretation of Swordfish's SEC filings. Specifically, Breneman stated in part that he believed the "consolidated" balance sheets of Swordfish and Swordfish Texas contained in Swordfish's post-2009 SEC filings showed a $3.5 million receivable owed to "the consolidated entities" by "another party" other than Swordfish or Swordfish Texas.[3]

As described above, the trial court's judgment from which this appeal is taken stated Altus should take nothing on "its causes of action based on garnishment, and/or piercing the corporate veil" and "its cause of action based on fraudulent transfer to the extent that such cause of action requests a money judgment against any defendant," but granted Altus "the right under Section 24.008(b) of the Texas Business and Commerce Code to levy execution on that specific stock transferred in 2010 by [Swordfish] to [Alexander] and [Moseley], which stock was described and identified by the evidence as being $1,255,520 in stock to [Alexander] and $327,520 in stock to [Moseley]."

Upon request by Altus, the trial court made findings of fact and conclusions of law.[4] This appeal timely followed.

---

[3] Additionally, subsequent to trial, Altus filed a "Closing Brief" and a "Closing Brief—Rebuttal Regarding Fraudulent Transfer Claims." The record does not contain any post-trial brief of appellees.

[4] The trial court's findings of fact and conclusions of law stated in part as follows:

Findings of Fact

. . . .

4. Swordfish Texas acquired 80% of the shares of [Swordfish] in return for a $3.5 million promissory note from Swordfish Texas.

5. The promissory note from Swordfish Texas to [Swordfish] was not personally guaranteed by anyone, including Defendants Alexander and Moseley.

. . . .

7. In the SEC filings listing the note as an asset of [Swordfish], the defendants Alexander and Moseley, in their capacity as Chief Executive Officer and President of [Swordfish], stated that "the company expects to be paid in full by shareholders of [Swordfish Texas]."

. . . .

11. In addition to seeking to hold the individual stockholders liable under a garnishment of [sic] action, Plaintiff also sought to sue the individuals on a theory of piercing the corporate veil, taking the position that the individual shareholders

–8–

# II. ALTUS'S ISSUES

## *A. Standard of Review*

Statutory construction is a legal question we review de novo. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008). In construing statutes, we ascertain and give effect

---

had caused the debt from Swordfish Texas to [Swordfish] to be cancelled (in exchange for stock) which debt was the only significant asset of [Swordfish].

[12]. This claim is based on the same argument made in the garnishment action, that the individual shareholders Alexander and Moseley, were personally liable to [Swordfish] for the $3.5 million note, and that by changing it, they personally benefitted by being relieved of their alleged personal guaranty.

13. In 2010, [Swordfish] transferred stock listed at the time with a value of $1,255,520 to Defendant Michael Alexander, and transferred stock listed at the time with a value of $327,520 to Defendant Randy Moseley.

14. There was no evidence of any consideration given for the transfers of said stock.

15. [Swordfish] was insolvent at the time of transfer.

16. There was no evidence that prior to the transfer, Plaintiff had tried to levy execution on said [Swordfish] stock to satisfy their judgment.

17. However, based on the transfer, Plaintiff also sued the individual defendants for a money judgment claiming a fraudulent transfer.

### Conclusions of Law

1. Defendants Alexander and Moseley were not guarantors of the $3.5 million note from Swordfish Texas to [Swordfish], and were therefore not personally liable to [Swordfish] for the note; [Swordfish] had no legal right to sue the individual Defendants on the note.

2. The Defendants were not personally indebted to [Swordfish], and therefore not subject to garnishment by Plaintiff[].

3. SEC filings saying that [Swordfish] expects to be paid on the $3.5 million note by the individual defendants as shareholders of Swordfish Texas, does not create a guarantee of the note from Swordfish Texas by the individual shareholder defendants.

4. A garnishor (Plaintiff in this case) cannot acquire through a garnishment proceeding, any greater rights against garnishee defendants Alexander and Moseley, than the debtor, [Swordfish] possesses.

5. The SEC filings do not recite or constitute a promise to pay the note by the individual shareholders.

6. Plaintiff's cause of action that seeks to hold individual shareholders Alexander and Moseley liable on a theory of piercing the corporate veil fails because the $3.5 million note forgiven by the judgment debtor [Swordfish] (in exchange for stock), was not personally guaranteed or owed to the judgment debtor by the shareholders Alexander and Moseley.

7. In 2010, a transfer of stock from the judgment debtor [Swordfish] was made to individual defendants Alexander and Moseley, without receiving adequate consideration.

8. Said transfer was made at a time when the judgment debtor was insolvent.

9. Under the provisions of Section 24.006 of the Texas Business and Commerce Code, the transfer made by the debtor [Swordfish] is considered fraudulent as to the Plaintiff creditor.

10. A money judgment against the individual shareholders who received the stock from [Swordfish] would place Plaintiff in a better position than they would have been if Plaintiff had actually levied execution on the stock of the debtor [Swordfish], before it was transferred.

11. Based on the facts and circumstances of the transfer, Plaintiff should have the right to be placed in the same position they would have been in if no transfer had been made, by being allowed to levy execution on the specific stock transferred in 2010, pursuant to Section 24.008(b) of the Texas Business and Commerce Code.

to the legislature's intent as expressed by the language of the statute. *Id*. (citing *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006)). "The plain meaning of the text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to an absurd result." *Challenger Gaming Solutions, Inc. v. Earp*, 402 S.W.3d 290, 296 (Tex. App.—Dallas 2013, no pet.) (citing *Hughes*, 246 S.W.3d at 625–26). Further, "[w]e determine legislative intent from the entire act and not just isolated portions." *20801, Inc. v. Parker*, 249 S.W.3d 392, 396 (Tex. 2008). Therefore, when interpreting a statutory provision, "we must consider its role in the broader statutory scheme." *Id*.

Findings of fact in a case tried to the court have the same force and effect as jury findings and are reviewed by the same standards used to review challenges to the sufficiency of the evidence to support jury findings. *See, e.g., Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *Sharifi v. Steen Automotive, LLC*, 370 S.W.3d 126, 147 (Tex. App.—Dallas 2012, no pet.); *Thornton v. Dobbs*, 355 S.W.3d 312, 315 (Tex. App.—Dallas 2011, no pet.). When a party challenges the legal sufficiency of the evidence to support an adverse finding on which he did not have the burden of proof at trial, the party must demonstrate that there is no evidence to support the adverse finding. *See, e.g., Thornton*, 355 S.W.3d at 316. If more than a scintilla of evidence supports the finding, the no-evidence challenge fails. *Id*. When a party challenges the legal sufficiency of the evidence to support an adverse finding on an issue on which he had the burden of proof at trial, he must show there is no evidence to support the trial judge's finding and the evidence conclusively establishes the finding urged by the challenging party. *See, e.g., Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001); *PopCap Games, Inc. v. MumboJumbo, LLC*, 350 S.W.3d 699, 710 (Tex. App.—Dallas 2011, pet. denied). "Evidence is conclusive only if reasonable people could not differ in their conclusions,

–10–

a matter that depends on the facts of each case." *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

In our review, we must credit favorable evidence if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *Id*. at 827. The trial court, as fact-finder in a bench trial, is the sole judge of the credibility of the witnesses. *Id*.

We review a trial court's conclusions of law de novo. *See, e.g.*, *Sharifi*, 370 S.W.3d at 148; *Bundren v. Holly Oaks Townhomes Ass'n, Inc*., 347 S.W.3d 421, 430 (Tex. App.—Dallas 2011, pet. denied). "The appellant may not challenge a trial court's conclusions of law for factual insufficiency; however, the reviewing court may review the trial court's legal conclusions drawn from the facts to determine their correctness." *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Wright Grp. Architects–Planners, P.L.L.C. v. Pierce*, 343 S.W.3d 196, 199 (Tex. App.—Dallas 2011, no pet.). We must uphold conclusions of law if any legal theory supported by the evidence sustains the judgment. *See Bailey v. Gallagher*, 348 S.W.3d 322, 326 (Tex. App.—Dallas 2011, pet. denied); *Bundren*, 347 S.W.3d at 430.

### B. Applicable Law

Chapter 24 of the Texas Business and Commerce Code is known as the Uniform Fraudulent Transfer Act ("UFTA"). *See* TEX. BUS. & COM. CODE ANN. §§ 24.001–.013 (West 2009 & Supp. 2013). UFTA is intended to prevent debtors from defrauding creditors by moving assets out of reach. *See, e.g.*, *Challenger Gaming Solutions*, 402 S.W.3d at 293; *Arriaga v. Cartmill*, 407 S.W.3d 927, 931 (Tex. App.—Houston [14th Dist.] 2013, no pet.). "[T]he focus of an UFTA claim is to ensure the satisfaction of a creditor's claim when the elements of a fraudulent transfer are proven." *Challenger Gaming Solutions*, 402 S.W.3d at 298.

Consistent with its purpose, UFTA provides a comprehensive statutory scheme through which a creditor may seek recourse for a fraudulent transfer of assets or property. *See id.* at 293;

–11–

*Arriaga*, 407 S.W.3d at 932. UFTA delineates what types of transfers and obligations are fraudulent, enumerates the remedies available to a creditor, prescribes the measure of liability of a transferee, and lists the defenses and protections afforded a transferee. *Challenger Gaming Solutions*, 402 S.W.3d at 294. The judgment creditor has the burden to prove the fraudulent transfer by a preponderance of the evidence. *See, e.g., Doyle v. Kontemporary Builders, Inc.*, 370 S.W.3d 448, 453 (Tex. App.—Dallas 2012, pet. denied).

Section 24.002(12) of UFTA defines "transfer" as meaning "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset," including "payment of money, release, lease, and creation of a lien or other encumbrance." TEX. BUS. & COM. CODE ANN. § 24.002(12). Section 24.006(a) states "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." *Id*. § 24.006(a). "Value" is given for a transfer or obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied. *Id*. § 24.004(a). "Reasonably equivalent value" includes a transfer or obligation that is within the range of values for which the transferor would have sold the asset in an arm's length transaction. *Id*. § 24.004(d).

Section 24.008, titled "Remedies of Creditors," provides as follows:

(a) In an action for relief against a transfer or obligation under this chapter, a creditor, subject to the limitations in Section 24.009 of this code, may obtain:

(1) avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;

(2) an attachment or other provisional remedy against the asset transferred or other property of the transferee . . . ; or

–12–

(3) subject to applicable principles of equity and in accordance with applicable rules of civil procedure:

(A) an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

(B) appointment of a receiver to take charge of the asset transferred or other property of the transferee; or

(C) any other relief the circumstances may require.

(b) If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds.

*Id*. § 24.008.

Section 24.009 of the business and commerce code is titled "Defenses, Liability, and Protection of Transferee." *Id*. § 24.009. Subsection (b) of section 24.009 states in part that "[e]xcept as otherwise provided in this section, to the extent a transfer is voidable in an action by a creditor under Section 24.008(a)(1) of this code, the creditor may recover judgment for the value of the asset transferred, as adjusted under Subsection (c) of this section, or the amount necessary to satisfy the creditor's claim, whichever is less."[5]  *Id*. § 24.009(b). The judgment may be rendered against the first transferee, the person for whose benefit the transfer was made, or any subsequent transferee other than a good faith transferee who takes for value or from any subsequent transferee. *Id*. Subsection (c) of section 24.009 states in part "if the judgment under Subsection (b) of this section is based upon the value of the asset transferred, the judgment must be for an amount equal to the value of the asset at the time of the transfer, subject to adjustment as the equities may require." *Id*. § 24.009(c)(1).

A "guaranty" is "an undertaking by one person to be answerable for the payment of some debt or the performance of some contract or duty by another person, who himself remains

---

[5] The portions of section 24.009 not specifically cited herein are not pertinent to this appeal.

liable." *Wells Fargo Bank, N.A. v. Smuck*, 407 S.W.3d 830, 835 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (citing *Wood v. Canfield Paper Co.*, 5 S.W.2d 748, 749 (Tex. 1928)). A party seeking to establish an action on a guaranty is required to show, among other elements, the existence of a guaranty contract. *See Gold's Gym Franchising LLC v. Brewer*, 400 S.W.3d 156, 160 (Tex. App.—Dallas 2013, no pet.). "The essential terms of a guaranty agreement are (1) the parties involved, (2) a manifestation of intent to guaranty the obligation, and (3) a description of the obligation being guaranteed." *Material P'ships, Inc. v. Ventura*, 102 S.W.3d 252, 261 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); *see Park Creek Assocs., Ltd. v. Walker*, 754 S.W.2d 426, 429 (Tex. App.—Dallas 1988, writ denied).

### *C. Analysis*

#### 1. Altus's Request for Money Judgment

In its first issue, Altus contends the trial court erred "in declining to enter a money judgment against Defendants as provided in Tex. Bus. & Com. Code §24.009(b), and instead ruling, pursuant to Tex. Bus. & Com. Code §24.008(b), that the only relief allowed Plaintiff would be to execute on the transferred stock, where, as here, the transferred stock declined in value from $1,583,040 at the time of the transfer to less than $70,000 at the time of the trail court's ruling." Specifically, Altus asserts error as to the trial court's conclusions of law numbers ten and eleven, which form the basis for the operative portion of the trial court's judgment in question. In those conclusions of law, the trial court stated as follows:

> 10. A money judgment against the individual shareholders who received the stock from [Swordfish] would place Plaintiff in a better position than they would have been if Plaintiff had actually levied execution on the stock of the debtor [Swordfish], before it was transferred.

> 11. Based on the facts and circumstances of the transfer, Plaintiff should have the right to be placed in the same position they would have been in if no transfer had been made, by being allowed to levy execution on the specific stock transferred in 2010, pursuant to Section 24.008(b) of the Texas Business and Commerce Code.

–14–

Additionally, the trial court's findings of fact and conclusions of law pertaining to the first issue on appeal state the following:

### Findings of Fact

. . . .

13. In 2010, [Swordfish] transferred stock listed at the time with a value of $1,255,520 to Defendant Michael Alexander, and transferred stock listed at the time with a value of $327,520 to Defendant Randy Moseley.

14. There was no evidence of any consideration given for the transfers of said stock.

15. [Swordfish] was insolvent at the time of transfer.

16. There was no evidence that prior to the transfer, Plaintiff had tried to levy execution on said [Swordfish] stock to satisfy their judgment.

17. However, based on the transfer, Plaintiff also sued the individual defendants for a money judgment claiming a fraudulent transfer.

### Conclusions of Law

. . . .

7. In 2010, a transfer of stock from the judgment debtor [Swordfish] was made to individual defendants Alexander and Moseley, without receiving adequate consideration.

8. Said transfer was made at a time when the judgment debtor was insolvent.

9. Under the provisions of Section 24.006 of the Texas Business and Commerce Code, the transfer made by the debtor [Swordfish] is considered fraudulent as to the Plaintiff creditor.

Altus does not assert error as to those findings of fact or as to conclusions of law numbers seven, eight, and nine.

According to Altus, (1) "it is clear that under [UFTA], a plaintiff who establishes the existence of an avoidable fraudulent transfer is **entitled to a money judgment** for the value of the asset transferred" (emphasis original) and (2) "[t]he remedy of a money judgment is especially called for and required where, as here, the transferred property has substantially declined in value." Further, Altus asserts

–15–

Had the fraudulent transfer in this case not occurred; i.e., had Garnishee Defendants caused [Swordfish] to sell the stock they fraudulently transferred to themselves and banked the proceeds, [Swordfish] would have had more than enough cash on hand to satisfy Appellant's judgment. Thus, although the trial court's observation in conclusions of law 10 and 11 that a money judgment would place Plaintiff in a better position than it would have been absent the transfer, is not relevant to the analysis of the proper remedy, it is also clearly incorrect. Garnishee Defendants used their power over [Swordfish] to enrich themselves with cash and stock, and now that [Swordfish's] stock is essentially valueless all that the trial court has done to make Appellant whole in the wake of a clearly fraudulent transfer, held to be so by the trial court, is to authorize Appellant to become the title holder of this worthless stock.

(citations to record omitted). Altus states it "has not found Texas authority directly on this point."

Appellees do not contest the trial court's conclusion that the 2010 stock transfers to Alexander and Moseley constitute fraudulent transfers pursuant to section 24.006. Further, they respond in part that the trial court "correctly ruled that pursuant to Tex. Bus. & Com. Code §24.008(b), the only relief allowed Appellant would be to execute on the transferred stock." According to appellees,

Appellants [sic] can point to no supporting case law in this jurisdiction which overcomes the well-known jurisprudence in Texas that a plaintiff is precluded from seeking a windfall or placing themselves in a better position through money damages versus imposing a levy on the item fraudulently transferred.

Thus, despite Appellant's argument, the analysis of a money judgment placing Appellant in a better position than it would have been absent the transfer is clearly relevant to the analysis of the proper remedy. Once again, the trial court found no evidence that Appellees used their power over [Swordfish] to enrich themselves with cash and stock, or that Appellees purposely devalued [Swordfish's] stock. The trial court merely held that the transfers of stock were performed without consideration, or equivalent value. Thus, fraudulent transfer, in terms of avoiding the transfer as an apparent creditor, does not constitute fraud for purposes of holding any punitive damages against the Appellees. Instead, fraudulent transfers, for the purpose of levying on the property so transferred, look to the value of the property and whether the property itself can be recaptured by the creditor.

Appellees cite no case law in support of their argument.

In its reply brief in this Court, Altus argues in part "[a] money judgment as requested by Appellant at trial and in this appeal is a statutory remedy for compensation of the Plaintiff, not punishment of the Defendant."

As described above, UFTA provides for several remedies to creditors. *See* TEX. BUS. & COM. CODE ANN. §§ 24.008, 24.009. However, UFTA does not specify how a remedy is to be selected in a particular case. To the extent appellees contend UFTA limits a creditor who has obtained a judgment against the debtor to the remedy described in Subsection 24.008(b), i.e. execution on the asset transferred or its proceeds, the language of UFTA does not, on its face, state such a limitation. *See id*. § 24.008; *see also Hughes*, 246 S.W.3d at 625. Further, appellees cite no case law supporting such a limitation, and we have found none.

Rather, we find the analysis in *Arriaga* persuasive. *See Arriaga*, 407 S.W.3d at 927. In that case, Michelle Arriaga sued her former husband, Robert Cartmill, and his two adult sons, alleging Cartmill fraudulently transferred tracts of real property to his sons to avoid a money judgment Arriaga was granted in their divorce. *Id*. at 928. After a bench trial, the trial court found in Arriaga's favor on her UFTA claim, but declined to set aside Cartmill's transfers of the property. *Id*. Instead, the trial court granted Arriaga a money judgment. *Id*. On appeal, Arriaga contended the trial court erred by rendering a money judgment rather than an order to execute on the transferred properties under UFTA as she requested. *Id*. She argued that the relief the trial court granted "was actually no relief at all" because she had already obtained a money judgment against Cartmill in the divorce and her reason for filing the fraudulent transfer action was that she had been unable to collect the judgment for several years. *Id*. at 931. The Fourteenth Court of Appeals in Houston noted that UFTA "is intended to prevent a debtor from defrauding his creditors by moving assets out of reach" and "provides a comprehensive statutory scheme through which a creditor may seek recourse for a fraudulent transfer." *Id*. at 931–32 (citing TEX.

–17–

BUS. & COM. CODE ANN. §§ 24.008, 24.009). Further, the court of appeals observed that Cartmill (1) did not challenge the trial court's judgment of liability under UFTA on appeal and (2) "acknowledged he owed [Arriaga] money under the previous judgment but was unwilling or unable to pay it." *Id.* at 932–33. The court of appeals stated, "On these facts, the trial court's award of a money judgment effectively denies [Arriaga], the prevailing party, the equitable relief she sought—a result that is contrary to the purpose of the UFTA." *Id.* at 933. The court of appeals concluded "the trial court erred by awarding [Arriaga] a judgment for money damages when [Arriaga] (1) had previously obtained a money judgment on a claim against [Cartmill] on which she had been unable to collect, (2) prevailed on her UFTA claim, and (3) specifically requested that she be allowed to levy execution on the properties [Cartmill] transferred to his sons as provided under section 24.008(b)." *Id.*

In the case before us, the record shows Swordfish "issued" the stock in question to Alexander and Moseley in three increments in March, July, and October of 2010. Further, the record shows the trial court (1) made findings of fact and conclusions of law not challenged by any party that the stock in question was "transferred" by Swordfish to Alexander and Moseley "in 2010" and (2) concluded that the money judgment requested by Altus would "place Plaintiff in a better position than they would have been if Plaintiff had actually levied execution on the stock of the debtor [Swordfish], before it was transferred."

Ownership interests in a corporation may be certificated or uncertificated. *See* TEX. BUS. ORG. CODE ANN. § 3.201(a) (West 2012). The Texas Business and Commerce Code provides in part that a corporation becomes an "issuer" of a security when it "creates" an interest in its property which is "represented by a security certificate" or is "an uncertificated security." TEX. BUS. & COM. CODE ANN. § 8.201(a). Texas Rule of Civil Procedure 641, titled "Levy on Shares of Stock," states

–18–

> A levy upon shares of stock of any corporation or joint stock company for which a certificate is outstanding is made by the officer seizing and taking possession of such certificate. Provided, however, that nothing herein shall be construed as restricting any rights granted under [former] Section 8.317 of the Texas Uniform Commercial Code [currently Section 8.112].

TEX. R. CIV. P. 641. Section 8.112 of the Texas Uniform Commercial Code, titled "Creditor's Legal Process," provides in part "[t]he interest of a debtor in a certificated security may be reached by a creditor only by actual seizure of the security certificate by the officer making the attachment or levy" and "[t]he interest of a debtor in an uncertificated security may be reached by a creditor only by legal process on the issuer." TEX. BUS. & COM. CODE ANN. § 8.112(a)–(b). The Texas Business and Commerce Code contains no provision respecting a levy on unissued stock, nor have we found such a provision outside of the code.

There is no evidence in the record showing the stock in question was "issued" by Swordfish "before" the 2010 "transfer" described by the trial court. Rather, nothing in the record shows there is any distinction between when the stock was "issued" as contrasted with when the stock was "transferred." In fact, it appears from the evidence the terms have been used by the parties, by the trial court, and in the evidence interchangeably. Therefore, the record does not show Altus had the opportunity, pursuant to the trial court's conclusions of law numbers ten and eleven, to "actually lev[y] execution" on the stock in question "before it was transferred." *See* TEX. R. CIV. P. 641; TEX. BUS. & COM. CODE ANN. § 8.112(a)–(b). On this record, we conclude the trial court's conclusions of law numbers ten and eleven are not correctly drawn from the facts. *See BMC Software Belgium, N.V.*, 83 S.W.3d at 794; *Wright Grp. Architects–Planners, P.L.L.C.*, 343 S.W.3d at 199.

As to the availability of a remedy under section 24.009, the trial court concluded the transfer in question was fraudulent under UFTA and appellees do not appeal the trial court's judgment. Accordingly, on this record, the transfer in question is "voidable in an action by a

–19–

creditor under Section 24.008(a)(1)" as required by section 24.009(b). *See* TEX. BUS. & COM. CODE ANN. §§ 24.009(b), 24.008(a)(1); *see also Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd.*, 80 S.W.3d 601, 609 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (where creditor prevails on merits of UFTA claim, transfer is voidable under section 24.008). Additionally, the record shows (1) Alexander and Moseley are "first transferee[s]" or "person[s] for whose benefit the transfer was made," *see* TEX. BUS. & COM. CODE ANN. § 24.009(b); (2) Altus requested a money judgment in the trial court and did not request an opportunity to levy execution on the stock in question; and (3) the common stock of Swordfish significantly decreased in value subsequent to the time of the transfer. On this record, we conclude the trial court erred by (1) limiting Altus's relief to "the right under Section 24.008(b) of the Texas Business and Commerce Code to levy execution on that specific stock transferred in 2010 by [Swordfish] to [Alexander] and [Moseley]" and (2) not granting a money judgment against Alexander and Moseley as provided in Texas Business & Commerce Code §24.009(b). *See Arriaga*, 407 S.W.3d at 933; *Challenger Gaming Solutions*, 402 S.W.3d at 298 ("the focus of an UFTA claim is to ensure the satisfaction of a creditor's claim when the elements of a fraudulent transfer are proven"); *see also* TEX. BUS. & COM. CODE ANN. § 24.009.

We reverse the portion of the trial court's judgment granting Altus "the right under Section 24.008(b) of the Texas Business and Commerce Code to levy execution on that specific stock transferred in 2010 by [Swordfish] to [Alexander] and [Moseley]." Further, we render judgment in favor of Altus against Alexander and Moseley in the amount of (1) the Minnesota judgment described above plus accrued interest on that judgment[6] or (2) the value of the asset

---

[6] In its application for writ of garnishment, Altus requested in part "costs of the suit in the original case and in this garnishment proceeding." However, the record does not show Altus was awarded "costs of the suit in the original case." Therefore, we conclude such costs do not constitute part of "the amount necessary to satisfy the creditor's claim." *See* TEX. BUS. & COM. CODE ANN. § 24.009(b); *Citizens Nat'l Bank of Tex. v. NXS Constr., Inc.*, 387 S.W.3d 74, 91–92 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

transferred at the time of the transfer in question,[7] whichever is less, plus costs of court in the trial court below and post-judgment interest.  Additionally, we remand this case to the trial court to calculate the amount of accrued interest on the Minnesota judgment and determine the amount of the judgment to be awarded in this case in accordance with section 24.009(b)–(c) by comparing the value of the asset transferred at the time of the transfer and the amount of the Minnesota judgment plus accrued interest, so that whichever is less will be the amount of the judgment in this case, plus costs of court in the trial court below and post-judgment interest as provided by law.

We decide in favor of Altus on its first issue.

2. Liability Based on $3.5 Million Note and Reverse Merger Transaction

In its second issue, Altus contends the trial court erred by ruling (1) the SEC filings described above did not create an obligation on behalf of Alexander and Moseley to pay the $3.5 million note to Swordfish and (2) if no such obligation was created, the transfer of that stock was not fraudulent as to Altus.  Altus argues in part

> The trial court wholly ignored the ubiquitous language in the SEC filings signed by Garnishee Defendants characterizing the $3.9 million obligation as an "Officer and Director Promissory Note to Company" and Mr. Breneman's testimony that the listing of the asset on the consolidated financial statements had to mean that the Note was owed by someone other than Swordfish Texas, and instead merely focused on the "expects to be paid" language and holding that it was insufficient to create personal liability of Garnishee Defendants. See Finding of Fact nos. 5, 7; Conclusions of Law 1–6.
>
> The characterization of the $3.5 million note as "Officer and Director Promissory Note to Company," affirmed as true by Defendant Alexander at trial, and the statements of expectation of payments from Garnishee Defendants, can mean only that they owe the amounts the SEC filing characterized as their obligations, and that they and [Swordfish] expected to be paid by Garnishee Defendants. Mr. Breneman's expert testimony regarding the consolidated financial statements further supports this conclusion.

---

[7] Altus argued in the trial court that the equities in this case "require no adjustment" under Subsection 24.009(c).  *See* TEX. BUS. & COM. CODE ANN. § 24.009(c).  The parties do not specifically address in their appellate briefs any "adjustment" pursuant to that subsection.

(additional citations to record omitted). According to Altus, the trial court's ruling is "incorrect and inconsistent with any reasonable construction of the evidence at trial." Additionally, Altus contends "other courts have consistently found parol documents to effect what in essence become guarantees of debts" and "SEC filings are commonly cited by these courts for this purpose." In support of those contentions, Altus cites two federal cases from New York, *UBS AG, Stamford Branch v. HealthSouth Corp.*, 645 F.Supp.2d 135 (S.D.N.Y. 2008), and *West Tsusho, Ltd. v. Prescott Bush & Co.*, No. 92 CIV. 3378, 1994 WL 710798 (S.D.N.Y. Dec. 20, 1994).

Appellees respond that "[t]he trial court correctly adduced that the language of the SEC filings did not create a personal guaranty on the obligations of the note for [Alexander and Moseley]." According to appellees, "there is no obligatory 'shall be paid' language conforming to a guaranty of payment."

The trial court stated in part in its findings of fact

5. The promissory note from Swordfish Texas to [Swordfish] was not personally guaranteed by anyone, including Defendants Alexander and Moseley.
. . . .
7. In the SEC filings listing the note as an asset of [Swordfish], the defendants Alexander and Moseley, in their capacity as Chief Executive Officer and President of [Swordfish], stated that "the company expects to be paid in full by shareholders of [Swordfish Texas]."

Additionally, in the conclusions of law challenged by Altus, the trial court stated

1. Defendants Alexander and Moseley were not guarantors of the $3.5 million note from Swordfish Texas to [Swordfish], and were therefore not personally liable to [Swordfish] for the note; [Swordfish] had no legal right to sue the individual Defendants on the note.

2. The Defendants were not personally indebted to [Swordfish], and therefore not subject to garnishment by Plaintiff[].

3. SEC filings saying that [Swordfish] expects to be paid on the $3.5 million note by the individual defendants as shareholders of Swordfish Texas, does not create a guarantee of the note from Swordfish Texas by the individual shareholder defendants.

–22–

4. A garnishor (Plaintiff in this case) cannot acquire through a garnishment proceeding, any greater rights against garnishee defendants Alexander and Moseley, than the debtor, [Swordfish] possesses.

5. The SEC filings do not recite or constitute a promise to pay the note by the individual shareholders.

6. Plaintiff's cause of action that seeks to hold individual shareholders Alexander and Moseley liable on a theory of piercing the corporate veil fails because the $3.5 million note forgiven by the judgment debtor [Swordfish] (in exchange for stock), was not personally guaranteed or owed to the judgment debtor by the shareholders Alexander and Moseley.

Because Altus had the burden of proof in the trial court to show the existence of a guaranty agreement, *see Gold's Gym Franchising LLC*, 400 S.W.3d at 160, it is required to show on appeal (1) there is no evidence to support the trial judge's finding that "[t]he promissory note from Swordfish Texas to [Swordfish] was not personally guaranteed by anyone, including Defendants Alexander and Moseley" and (2) the evidence conclusively establishes an obligation of Alexander and Moseley to pay the note. *See, e.g., Dow Chem. Co.*, 46 S.W.3d at 241; *PopCap Games, Inc.*, 350 S.W.3d at 710. Unlike the case before us, the federal cases cited by Altus each involved the issue of whether representations in SEC filings were admissible to resolve an ambiguity in an existing guaranty agreement. *See UBS AG, Stamford Branch*, 645 F.Supp.2d at 137; *W. Tsusho, Ltd.*, 1994 WL 710798 at *1. Therefore, those cases are inapposite.

The record in this case shows Alexander and Moseley testified at trial that they did not sign any guaranty respecting the $3.5 million note or make any representations guaranteeing that debt. Further, the evidence cited by Altus is, at most, equivocal as to any intent to guaranty the $3.5 million note. *See Material P'Ships, Inc.*, 102 S.W.3d at 261 ("manifestation of intent to guaranty the obligation" is essential element of guaranty). We cannot agree with Altus that such evidence "can mean only" that Alexander and Moseley owe the amounts due on the $3.5 million

–23–

note. On this record, we conclude Altus has not met its burden to demonstrate that there is no evidence to support the trial judge's finding of fact number five and that the evidence conclusively establishes Alexander and Moseley were obligated to pay the $3.5 million note. *See Dow Chem. Co.*, 46 S.W.3d at 241; *PopCap Games, Inc.*, 350 S.W.3d at 710.

Additionally, as described above, Altus asserts that if the SEC filings in question did not create an obligation on behalf of Alexander and Moseley to pay the $3.5 million note to Swordfish, the 2009 transfer of stock that occurred in connection with the making of that note was fraudulent as to Altus. In support of that argument, Altus asserts that Swordfish's SEC filings include the statement, "**the equity holders** of [Swordfish Texas] **acquired 10,987,417 shares of common stock** constituting 80% of voting control of [Swordfish] **in return for a $3,500,000 note** bearing interest at the rate of 5% per annum." (emphasis original to Altus's brief in this Court).

In its finding of fact number four, the trial court stated, "Swordfish Texas acquired 80% of the shares of [Swordfish] in return for a $3.5 million promissory note from Swordfish Texas." The record shows those shares were subsequently transferred by Swordfish Texas to shareholders of Swordfish Texas. To the extent Altus's argument on appeal can be construed to challenge finding of fact number four, Altus cites no evidence in the record, and we have found none, that Swordfish Texas (1) did not receive the shares in question before it transferred them to its shareholders or (2) did not execute a $3.5 million promissory note in exchange for those shares. On this record, we cannot agree with Altus that the 2009 transfer of stock in question was fraudulent as to Altus. *See* TEX. BUS. & COM. CODE ANN. § 24.006(a); *see also Doyle*, 370 S.W.3d at 453 (judgment creditor has burden to prove fraudulent transfer).

We decide against Altus on its second issue.

### 3. "Cancellation" of $3.5 Million Note as Basis for Liability

–24–

In its third issue, Altus asserts the trial court erred by concluding that the "cancellation" of the $3.5 million note owing to Swordfish "in exchange for stock worth less than $110,000" after Alexander's and Moseley's depositions in this case was neither "a fraudulent transfer" nor "a proper basis to pierce the corporate veil of [Swordfish]." According to Altus, "it is clear that by cancelling the $3.9 million note, essentially the only asset of [Swordfish], in exchange for giving back the initial 10,987,417 shares of stock worth only $110,000, Garnishee Defendants (1) caused [Swordfish] to fraudulently transfer $3.8 million in value to Garnishee Defendants; and (2) blatantly manipulated the corporate entity for solely and only their own benefit; *to wit*, to manufacture an argument that the debt Plaintiff claimed Garnishee Defendants owed Swordfish Minnesota no longer existed, thus giving rise to the duty of the trial court to pierce the corporate veil of [Swordfish] as a mere instrumentality and alter ego of Garnishee Defendants individually." (emphasis original).

First, we address Altus's assertion that the "cancellation" of the $3.5 million note in exchange for stock was a fraudulent transfer. Altus contends this theory of recovery was "advanced" by it in its post-trial "Closing Brief—Rebuttal Regarding Fraudulent Transfer Claims," but was "never even addressed by the trial court." Specifically, Altus argues

> The trial court rejected the piercing the corporate veil theory of recovery based upon its erroneous conclusion that Garnishee Defendants never owed the $3.9 million to [Swordfish]. See Finding of Fact 11 and 12 and conclusion of Law no. 6. **However, even if the trial court were correct, and Garnishee Defendants did not owe the $3.9 million to [Swordfish], it is evident that the transfer to themselves of a release, or merely effecting such a release, by an insolvent entity, of a $3.9 million liability for the reason that they feared they owed it, or indeed, for no reason at all, in exchange for transferring stock they owned to [Swordfish] with a market value at the time of the transfer of $110,000, was without reasonably equivalent consideration and wholly and utterly fraudulent, giving rise to a separate and independent basis for the trial court to impose personal liability on Garnishee Defendants**. . . . Garnishee Defendants' actions have obliterated this $3.9 million asset, thereby completely impoverishing [Swordfish].

(emphasis original) (citations to record omitted).

The record shows Altus stated in the introduction to its "Closing Brief—Rebuttal Regarding Fraudulent Transfer Claims" that its fraudulent transfer claims "fall into three general and wholly independent categories": (1) "the initial transfer to Garnishee Defendants of 10,987,417 shares in August 2009"; (2) "the transfers to Garnishee Defendants of $278,050 in cash and $1,635,040 in stock (approximately $1.9 million total) as 'compensation' they paid themselves while in control of [Swordfish]"; and (3) "Garnishee Defendants' post-deposition purported cancellation, mere days before the trial in this case, of the $3.9 million obligation they owed to [Swordfish] in exchange for the transfer by them of stock to [Swordfish] worth, at the time of their transfer to [Swordfish], only $110,000." Further, in the argument section of that closing brief pertaining to the third category, Altus stated

> In sum, Garnishee Defendants effected the purported elimination of a $3.9 million asset of [Swordfish], solely and only so that Garnishee Defendants could come before this Court a few days later in the trial following and claim that the obligation Plaintiff claimed they personally owed had been cancelled. In exchange for the benefit so conveyed on Garnishee Defendants, [Swordfish] received stock from Garnishee Defendants worth at the time of the transfer to [Swordfish] less than $110,000.

The record does not show Altus asserted in the trial court the portion of its argument on appeal described above in which it contends "**even if the trial court were correct, and Garnishee Defendants did not owe the $3.9 million to [Swordfish], it is evident that . . . merely effecting such a release, by an insolvent entity . . . for no reason at all, in exchange for transferring stock . . . with a market value at the time of the transfer of $110,000, was without reasonably equivalent consideration and wholly and utterly fraudulent.**" (emphasis original). Therefore, this particular complaint has not been preserved for this Court's review. *See* TEX. R. APP. P. 33.1(a). Rather, the record shows the fraudulent transfer claim asserted by Altus in the trial court respecting the "cancellation" in question was based on Altus's contentions that Alexander and Moseley were personally liable to Swordfish on the $3.5 million note. We

–26–

concluded above that those contentions were properly rejected by the trial court. Accordingly, we conclude the trial court did not err when it denied relief on Altus's claim that was based on those contentions.

Second, we consider Altus's assertion that the trial court erred by concluding that the "cancellation" of the $3.5 million note was not "a proper basis to pierce the corporate veil of [Swordfish]." According to Altus,

[Garnishee Defendants] have simply wiped $3.9 million in principal and interest off the books of [Swordfish]—the only significant asset of the company—which they have for years represented to the public was owned by [Swordfish] and was owed by and would be paid by themselves—in a desperate effort to protect themselves from garnishment liability in this proceeding. A clearer case of corporate manipulation, without any corporate purpose whatsoever, for the sole and only benefit of its controlling stockholders, is difficult to imagine. The trial court's failure to pierce the corporate veil of [Swordfish] and order that the individual assets of Garnishee Defendants are immediately available for repayment of the judgment in favor of Plaintiff and against [Swordfish], based only upon the trial court's erroneous conclusion that Garnishee Defendants did not ever owe the money to [Swordfish], was error requiring reversal.

The trial court's findings of fact complained of by Altus state as follows:

11. In addition to seeking to hold the individual stockholders liable under a garnishment of [sic] action, Plaintiff also sought to sue the individuals on a theory of piercing the corporate veil, taking the position that the individual shareholders had caused the debt from Swordfish Texas to [Swordfish] to be cancelled (in exchange for stock) which debt was the only significant asset of [Swordfish].

[12]. This claim is based on the same argument made in the garnishment action, that the individual shareholders Alexander and Moseley, were personally liable to [Swordfish] for the $3.5 million note, and that by changing it, they personally benefitted by being relieved of their alleged personal guaranty.

Further, in its conclusion of law number six, the trial court stated, "Plaintiff's cause of action that seeks to hold individual shareholders Alexander and Moseley liable on a theory of piercing the corporate veil fails because the $3.5 million note forgiven by the judgment debtor [Swordfish] (in exchange for stock), was not personally guaranteed or owed to the judgment debtor by the shareholders Alexander and Moseley."

–27–

As described above, the record shows Altus's argument in the trial court respecting its claim pertaining to "piercing the corporate veil" was based on Altus's theory that the garnishee defendants benefitted from the "cancellation" of the note because they were obligated on that note. On this record, we conclude the trial court did not err in rendering findings of fact numbers eleven and twelve and conclusion of law number six complained of above.

Additionally, in the section of its appellate brief pertaining to "piercing the corporate veil," Altus asserts that "further evidence of the manipulation of the corporate entity by Garnishee Defendants that was adduced at trial was the testimony of Garnishee Defendant Alexander that he paid for the defense of these garnishment proceedings by giving treasury stock to Defendants' attorney." To the extent Altus contends such evidence provides an independent basis for the relief it seeks, Altus cites no authority to support the position that such actions constitute a proper basis to "pierce the corporate veil" of Swordfish. *See* TEX. R. APP. P. 38.1(i) (appellant's brief must contain appropriate citations to authorities); *cf.* TEX. BUS. ORGS. CODE ANN. § 21.223 (West 2012) (limiting shareholder liability for obligations of corporation).

We decide Altus's third issue against it.

### III. CONCLUSION

We decide in favor of Altus on its first issue. Altus's second and third issues are decided against it.

We reverse the portion of the trial court's judgment granting Altus "the right under Section 24.008(b) of the Texas Business and Commerce Code to levy execution on that specific stock transferred in 2010 by [Swordfish] to [Alexander] and [Moseley]." Further, we render judgment in favor of Altus against Alexander and Moseley in the amount of (1) the Minnesota judgment described above plus accrued interest on that judgment or (2) the value of the asset transferred at the time of the transfer in question, whichever is less, plus costs of court in the trial

–28–

court below and post-judgment interest. Additionally, we remand this case to the trial court to calculate the amount of accrued interest on the Minnesota judgment and determine the amount of the judgment to be awarded in this case in accordance with section 24.009(b)–(c) by comparing the value of the asset transferred at the time of the transfer and the amount of the Minnesota judgment plus accrued interest, so that whichever is less will be the amount of the judgment in this case, plus costs of court in the trial court below and post-judgment interest as provided by law. The trial court's judgment is otherwise affirmed.

130666F.P05

/ Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ALTUS BRANDS II, LLC, Appellant

No. 05-13-00666-CV      V.

MICHAEL ALEXANDER, RANDY
MOSELEY, AND SWORDFISH
FINANCIAL, INC., Appellees

On Appeal from the 382nd Judicial District
Court, Rockwall County, Texas
Trial Court Cause No. 1-11-654.
Opinion delivered by Justice Lang, Justices
Myers and Brown participating.

In accordance with this Court's opinion of this date, we **REVERSE** the portion of the trial court's judgment granting appellant Altus Brands II, LLC "the right under Section 24.008(b) of the Texas Business and Commerce Code to levy execution on that specific stock transferred in 2010 by Swordfish Financial, Inc., to Defendants Michael Alexander and Randy Moseley"; **RENDER** judgment in favor of Altus Brands II, LLC against Michael Alexander and Randy Moseley in the amount of (1) the Minnesota judgment described in the opinion plus accrued interest on that judgment or (2) the value of the asset transferred at the time of the transfer in question, whichever is less, plus costs of court in the trial court below and post-judgment interest; and **REMAND** this case to the trial court to calculate the amount of accrued interest on the Minnesota judgment and determine the amount of the judgment to be awarded in this case in accordance with Texas Business and Commerce Code section 24.009(b)–(c) by comparing the value of the asset transferred at the time of the transfer and the amount of the Minnesota judgment plus accrued interest, so that whichever is less will be the amount of the judgment in this case, plus costs of court in the trial court below and post-judgment interest as provided by law. The trial court's judgment is otherwise **AFFIRMED**.

It is **ORDERED** that appellant Altus Brands II, LLC recover its costs of this appeal from appellees Michael Alexander, Randy Moseley, and Swordfish Financial, Inc.

Judgment entered this 17th day of June, 2014.


/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE