**Affirmed in Part and Reversed and Remanded in Part and Opinion filed August 13, 2013.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-12-00611-CV

---

### MICHELLE M. ARRIAGA, Appellant,

### V.

### ROBERT A. CARTMILL, TROY CARTMILL AND TRAVIS CARTMILL, Appellees.

---

**On Appeal from the 240th District Court
Fort Bend County
Trial Court Cause No. 08-DCV-167124**

---

### O P I N I O N

This is a dispute involving the Uniform Fraudulent Transfer Act (UFTA). Appellant Michelle M. Arriaga sued her former husband, appellee Robert A. Cartmill, and his two adult sons, appellees Troy and Travis Cartmill, alleging that Robert fraudulently transferred tracts of real property to his sons to avoid a money judgment Michelle was granted in their divorce. After a bench trial, the trial court

found in Michelle's favor on her claim under the UFTA, but declined to set aside Robert's transfers of the property. Instead, the trial court granted Michelle a judgment for the amount Robert owed on the earlier money judgment plus interest, totaling $52,000. On appeal, Michelle contends that the trial court erred in (1) rendering a money judgment rather than an order to execute on the transferred properties as she requested under the UFTA, and (2) failing to file findings of fact and conclusions of law. We reverse in part and remand for further proceedings consistent with this opinion.

I

On March 10, 2006, Michelle and Robert divorced. In the divorce decree, Michelle was awarded two judgments against Robert totaling $38,500, with 6 percent interest compounded annually from the date of the divorce until paid.

Robert appealed from the divorce decree, but this court dismissed Robert's appeal as untimely and denied his request for en banc reconsideration. Shortly after that, Robert executed five special warranty deeds transferring his ownership of five separate tracts of land to his sons, Troy and Travis. The two largest of the tracts were roughly 39 acres and 23 acres, and the three others were 4.232 acres, 3 acres, and 2.232 acres. In the meantime, Michelle had hired an attorney to collect on the divorce judgments. When the attorney tried to execute against the properties, however, Michelle discovered that the properties had been transferred to Robert's two sons.

In October 2008, Michelle sued Robert, Travis, and Troy, alleging that the transfers were fraudulent and that the defendants had participated in a civil conspiracy. Relevant here, Michelle alleged that Robert fraudulently transferred the properties to his sons in violation of UFTA section 24.006, which provides that a transfer made by a debtor is fraudulent as to a creditor "whose claim arose before

2

the transfer was made . . . if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer." *See* Tex. Bus. & Com. Code § 24.006(a). Michelle also set out in her petition the statutory relief available under UFTA section 24.008, including avoidance of the transfers, attachment against the properties, injunctive or other equitable relief, and an order to levy execution on the properties transferred or their proceeds. *See id.* § 24.008.

After filing suit, Michelle attempted to obtain discovery concerning the transfers. According to interrogatory answers, Travis and Troy each paid Robert $20,000 for the 39-acre and 23-acre tracts. However, the Cartmills failed to produce any evidence of bank statements or accounts showing the money Robert received from his sons for the purchase of the land. Michelle moved to compel the production of relevant documents, but despite an agreed order on the motion, the Cartmills again failed to produce any documents before trial indicating the amount of money paid for the properties.

The case was tried to the court in January 2012. Michelle and Robert both testified, but neither Travis nor Troy appeared at trial. Michelle presented evidence that Robert purchased all five tracts of land between 1990 and 1998 for a total cost of $267,000.[1] Michelle testified that she was familiar with the 39-acre and 23-acre tracts, and that the properties were rural land used by Robert in his business. Robert's business, known as Independent Tree Services, harvested and sold trees to homebuilders. Robert did not dispute Michelle's testimony that he purchased the properties for $267,000, other than to testify that the 23-acre tract was purchased

---

[1] Michelle testified that Robert paid $60,000 for the 39-acre tract in 1998, $147,000 for the 23-acre tract in 1990, and $20,000 each for the three smaller tracts in 1992.

for about $220,000, rather than $147,000, because of the value of the then-existing trees on the property.

Robert testified that in exchange for all five tracts, he received $41,000 from each of his sons—for a total of $82,000—but he produced no supporting evidence. Robert valued the 39-acre tract at $2,150 per acre, or $83,850. He valued the 23-acre tract at $3,000 per acre, or $69,000. Thus, based on Robert's testimony, the value of these two properties was $152,850. Robert also testified that he deposited the $82,000 he received from his sons into the Independent Tree Services account, but he presented no documentary evidence to support this contention.

Robert further testified that his two sons were aware of his divorce from Michelle and that he was on the verge of going out of business. According to Robert, at the time he made the transfers to his sons he was "financially whooped" and was unable to pay his bills. Robert further testified that he transferred the properties to get money to pay his bills and to survive. According to Robert, his sons paid for the properties with life-insurance proceeds they received after their mother passed away, but even after the transfers, Robert maintained, he was "still struggling." When asked whether he produced any documents to show how much he received for the properties, Robert stated that he produced six boxes of discovery that he gave to his attorney. However, none of these documents were produced at trial.

When examined by his attorney, Robert testified that he had tried to settle with Michelle but she would not take what was offered. He also testified that, after adding all of his resources together, he was willing to give Michelle $53,000 to get the judgment satisfied that day.

During closing arguments, Michelle's counsel argued that the evidence supported Michelle's UFTA claim that Robert fraudulently transferred the

4

properties to his sons without receiving a reasonably equivalent value for them and that Robert was insolvent at the time. Further, Michelle's counsel noted that she was simply trying to collect on her prior judgment, as she had been trying to do for the last four years.

In response, Robert's counsel argued that Michelle was "overreaching" and requested that the trial court instead enter a money judgment for the principal and interest Robert still owed Michelle. Robert's counsel represented that Robert had "$53,000 that he will go pick up right now and bring back to this court and satisfy this judgment."

Michelle's counsel agreed that the amount Robert owed Michelle was about $52,000, but he argued that the relief Robert's counsel was requesting was "really not before the Court" and asked to have "a judgment that we may levy against the assets transferred" as the UFTA provides. At the conclusion of the trial, the trial court announced that it was awarding Michelle a money judgment against Robert for $52,000, plus attorney's fees. The trial court also dismissed Michelle's conspiracy claims against Troy and Travis and refused to set aside the conveyances of the properties.[2]

Several months later, on April 4, 2012, the trial court signed a written judgment consistent with its rulings. In the judgment, the trial court recited that "[o]n the claim of Fraudulent Transfer, the Court finds in favor of [Michelle] and against [Robert]," and ordered that Michelle recover damages of $52,000 from Robert, "for the principal and interest due on the outstanding claim." The trial court also awarded Michelle $17,653 in reasonable attorney's fees and costs, plus post-judgment interest of 5 percent. The trial court dismissed the claims against

---

[2] On appeal, Michelle does not challenge the trial court's dismissal of her conspiracy claims against Troy and Travis.

Travis and Troy, and expressly declined to order the previous conveyances of the properties to be set aside.

Michelle moved to modify the trial court's judgment on the grounds that the money judgment she was awarded was neither requested nor allowed under chapter 24 of the UFTA. She also stated that the relief she sought was for the court to enable her to levy execution against the two largest properties as provided under section 24.008(b) of the UFTA, and noted that the trial court also could have ordered other appropriate relief under section 24.008(a). The trial court denied the motion, and this appeal followed.

II

We begin with Michelle's second issue, in which she contends that the trial court's failure to file findings of fact and conclusions of law was harmful error. When properly requested, the trial court has a mandatory duty to file findings of fact and conclusions of law. *Cherne Indus., Inc. v. Magallanes*, 763 S.W.2d 768, 770 (Tex. 1989). If the trial court does not file findings of fact and conclusions of law, harm is presumed unless the record affirmatively shows that the requesting party was not harmed by their absence. *Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996) (per curiam). Error is harmful if it prevents an appellant from properly presenting a case to the appellate court. *Id.*

Michelle claims that she was harmed because she is forced to guess at the reasons why the trial court ruled in her favor but did not give her the relief she requested under the UFTA. She requested that we abate this appeal and order the trial court to file findings of fact and conclusions of law. We granted Michelle's request, abated the appeal, and directed the trial court to file findings of fact and conclusions of law.

6

The trial court promptly forwarded its findings and conclusions. Although the trial court found in Michelle's favor and granted her a money judgment and attorney's fees on her only surviving claim, the trial court's findings and conclusions do not identify the basis for the money judgment or explain why the trial court did not grant the relief Michelle requested. The only new information in the trial court's findings and conclusions is the following: "The Court does not order that the previous conveyances of land be set aside. The Court finds those transfer [sic] were for adequate consideration."

This finding explains that the trial court did not grant Michelle the equitable relief of setting aside the conveyances because it found they were for adequate consideration. *See* Tex. Bus. & Com. Code § 24.008(a)(1) (providing that a creditor may obtain "avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim"). But at trial, Michelle did not seek to set aside the conveyances under subsection (a)(1); instead, she expressly requested that she be allowed to levy execution on the properties as provided under subsection (b). *See id.* § 24.008(b) ("If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds."). We therefore disregard this finding as immaterial to the trial court's judgment. *See Wells Fargo Bank, N.A. v. Citizens Bank of Tex., N.A.*, 181 S.W.3d 790, 796 (Tex. App.—Waco 2005, pet. denied).

Thus, although the trial court responded to this court's order, its findings of fact and conclusions of law shed no light on the basis for its judgment. We therefore proceed to Michelle's first issue and address the parties' arguments as briefed.

## III

In her first issue, Michelle contends that the trial court erred in rendering a money judgment rather than an order to execute on the transferred properties as she requested under chapter 24 of the UFTA. According to Michelle, the relief the trial court granted was actually no relief at all, because she had already obtained a money judgment against Robert in the divorce and her reason for filing the fraudulent transfer action was that she had been unable to collect the judgment for several years.

The UFTA is intended to prevent a debtor from defrauding his creditors by moving assets out of reach. *Citizens Nat'l Bank of Tex. v. NXS Constr., Inc.*, 387 S.W.3d 74, 79 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Numerous types of transactions are fraudulent for purposes of the UFTA. *See* Tex. Bus. & Com. Code §§ 24.005, 24.006; *NXS Constr., Inc.*, 387 S.W.3d at 79. Relevant here, section 24.006(a) provides that a debtor's transfer is fraudulent as to a creditor whose claim arose before the transfer if the debtor did not receive a reasonably equivalent value in exchange for the transfer and the debtor was insolvent at that time or became insolvent as a result of the transfer. *See* Tex. Bus. & Com. Code § 24.006(a). A fraudulent transfer defined by section 24.006(a) does not include intent as an element of required proof. *Esse v. Empire Energy III, Ltd.*, 333 S.W.3d 166, 178 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *Metra United Escalante, L.P. v. Lynd Co.*, 158 S.W.3d 535, 542 (Tex. App.—San Antonio 2004, no pet.).

Consistent with its purpose, the UFTA provides a comprehensive statutory scheme through which a creditor may seek recourse for a fraudulent transfer of assets or property. *See* Tex. Bus. & Com. Code §§ 24.008, 24.009; *Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd.*, 80 S.W.3d 601, 607 (Tex. App.—

Houston [1st Dist.] 2002, no pet.). The UFTA's remedies under section 24.008 include avoidance of the transfer, temporary attachment of the transferred asset, and other equitable remedies. *See* Tex. Bus. & Com. Code § 24.008(a). And, if a creditor has obtained a judgment on a claim against the debtor, and the trial court so orders, the creditor may levy execution on the asset transferred or its proceeds. *Id.* § 24.008(b). The trial court may also award costs and reasonable attorney's fees in proceedings under the UFTA. *See id.* § 24.013; *NXS Constr., Inc.*, 387 S.W.3d at 80.

On appeal, Robert does not seek to overturn the trial court's judgment against him. Instead, he argues that the trial court did not abuse its discretion by declining to award Michelle the right to levy execution on the transferred properties. Specifically, Robert argues that the trial court was entitled to believe his testimony that he had experienced a downturn in his business, his sons had obtained money from their inheritance, and he transferred the properties to his sons because "they had the funds available and the funds were needed" for Robert's business to survive. Thus, Robert maintains, the trial court could have concluded that there was no intent to defraud Michelle when he made the transfers. In connection with this argument, Robert also asserts that that the fair market value of the properties was "within the purview of the seller in need of funds to survive."

To impose liability under section 24.006(a), Michelle was required to prove that (1) her claim arose against Robert prior to the transfer; (2) Robert did not receive a reasonably equivalent value for the transfer; and (3) Robert was insolvent at the time of the transfer or became insolvent as a result of the transfer. *See* Tex. Bus. & Com. Code § 24.006(a). The trial court's judgment reflects that it found in Michelle's favor on her UFTA claim and awarded her damages and attorney's fees and costs. On appeal, Robert does not challenge the trial court's judgment of

9

liability; he argues only that the trial court did not abuse its discretion in awarding a money judgment rather than execution on the properties, and he expressly asserts that the trial court's judgment should be affirmed.

To the extent Robert is contending that the money judgment was equitable under the circumstances, he cites no authorities to support this assertion, nor does he identify any statutory basis for the award of a money judgment on these facts. Robert's argument appears to be directed at the requirement that he made the transfer "without receiving a reasonably equivalent value in exchange for the transfer." *See id.* To the extent that Robert may be attempting to argue that the trial court did not abuse its discretion by concluding that the transfers were for a reasonably equivalent value, Robert's argument is contrary to the trial court's unchallenged determination that Michelle prevailed on her UFTA claim. In any event, the UFTA defines "reasonably equivalent value" as including, without limitation, "a transfer or obligation that is within the range of values for which the transferor would have sold the assets in an arm's length transaction." *See* Tex. Bus. & Com. Code § 24.004(d). Robert cites no authorities in support of his argument that fair market value is in the eyes of the seller in need of cash. And, as noted above, intent to defraud is not an element of liability under section 24.006(a). *See Esse*, 333 S.W.3d at 178; *Metra United Escalante, L.P.*, 158 S.W.3d at 542.

Michelle suggests that, although the trial court may have been convinced that Robert was going to immediately tender the $52,000 he owed her at the conclusion of trial as he and his counsel represented, that was not the relief she requested at trial. Michelle already had a money judgment on which she was unable to collect—which is why she sought relief under the UFTA—and the trial court's judgment merely gave her the same relief she already had. Consequently, the trial court's award of another money judgment was no relief at all. Further,

10

Robert acknowledged he owed Michelle money under the previous judgment but was unwilling or unable to pay it, and it is undisputed that the amount owed as of the date of the judgment is $52,000. On these facts, the trial court's award of a money judgment effectively denies Michelle, the prevailing party, the equitable relief she sought—a result that is contrary to the purpose of the UFTA. *See NXS Constr., Inc.*, 387 S.W.3d at 79 (noting that the UFTA is intended to prevent a debtor from defrauding his creditors by moving assets out of reach); Tex. Bus. & Com. Code §24.008(b) (authorizing the trial court to order a creditor who has obtained a judgment against the debtor to "levy execution on the asset transferred or its proceeds"); *see also* Tex. Bus. & Com. Code § 24.008(a) (authorizing avoidance of the transfer, temporary attachment of the transferred asset, and other remedies consistent with principles of equity and applicable rules of civil procedure).

We conclude that, under the facts and circumstances of this case, the trial court erred by awarding Michelle a judgment for money damages when Michelle (1) had previously obtained a money judgment on a claim against Robert on which she had been unable to collect, (2) prevailed on her UFTA claim, and (3) specifically requested that she be allowed to levy execution on the properties Robert transferred to his sons as provided under section 24.008(b). *See* Tex. Bus. & Com. Code §§ 24.006(a), 24.008(b). We therefore sustain Michelle's first issue and reverse that portion of the trial court's judgment granting a money judgment to Michelle for $52,000. The trial court's finding of liability under the UFTA remains undisturbed. We remand for the trial court to consider Michelle's request for levied execution on some or all of the transferred properties under section 24.008(b). *See Corpus v. Arriaga*, 294 S.W.3d 629, 631, 637 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (remanding for consideration of request for levied execution on real

11

property under UFTA section 24.008(b)). We affirm the remainder of the judgment.



/s/    Jeffrey V. Brown
       Justice


Panel consists of Justices Brown, Christopher, and McCally.