**Harry SARGEANT III and BTB Refining LLC, Appellants,**

v.

**Mohammad Anwar Farid AL SALEH, Appellee.**

**NUMBERS 13–15–00327–CV & 13–15–00395–CV**

Court of Appeals of Texas, Corpus Christi-Edinburg.

Delivered and Filed January 28, 2016

---

Debbie Green, Deirdre B. Ruckman, Stacy R. Obenhaus, Gardere Wynne Sewell LLP, Dallas, TX, Mark T. Mitchell, Gardere Wynne Sewell LLP, Austin, TX, for Appellants.

Daniel D. Pipitone, Attorney at Law, Kenneth Bullock II, Houston, TX, Nolan C. Knight, Munsch Hardt Kopf & Harr P.C., Dallas, TX, for Appellee.

Before Chief Justice Valdez and Justices Rodriguez and Benavides

## OPINION

Opinion by Chief Justice Valdez

By notice of appeal filed in cause number 13–15–00327–CV, appellants Harry Sargeant III and BTB Refining LLC ("BTB") challenged a July 2, 2015 temporary injunction rendered in favor of appellee Mohammad Anwar Farid Al Saleh. BTB, but not Sargeant, also challenged the temporary injunction through a separate petition for writ of mandamus filed in cause number 13–15–00395–CV.

In the underlying lawsuit, Al Saleh is attempting to collect on a judgment rendered against Sargeant in the State of Florida and domesticated in Texas. The temporary injunction at issue in these causes prevented Sargeant and BTB from transferring approximately $21 million dollars in assets to other persons or entities or transferring that amount out of the

jurisdiction of the court. The temporary injunction was issued on grounds that BTB was Sargeant's alter ego and BTB was attempting to transfer assets out of the country to another entity as a "transfer made with the intent to delay, hinder, and defraud." We dismiss the petition for writ of mandamus, and we affirm the temporary injunction in the interlocutory appeal.

## I. BACKGROUND

### A. Business Venture

In 2004, Al Saleh entered into a business venture with Sargeant and Mustafa Abu Naba'a to bid for and obtain government contracts to supply fuel to United States troops in Iraq. Al Saleh's role in this venture was critical because he had obtained an authorization letter from the King of Jordan to transport oil through Jordan to Iraq. The parties agreed to use International Oil Trading Center, Ltd. ("IOTC Jordan"), a Jordanian company as the vehicle to bid on and obtain the fuel contracts. The shares of IOTC Jordan were distributed evenly to Al Saleh, Naba'a, and Sargeant. IOTC Jordan began obtaining fuel contracts.

In 2005, without Al Saleh's knowledge, Sargeant and Naba'a formed two new business entities: International Oil Trading Company, LLC ("IOTC USA"), a Florida corporation, and International Oil Trading Free Zone Company ("IOTC Dubai"). Sargeant and Naba'a transferred their interests in IOTC USA to IOTC Dubai. They used IOTC USA to bid on and obtain new fuel contracts. IOTC USA replaced IOTC Jordan as the contracting party to the original fuel contract. IOTC USA and IOTC Dubai began receiving all profits from the business venture, and Al Saleh was excluded from the profits for the fuel contracts that IOTC Jordan continued to service.

### B. Florida Lawsuit

In 2008, Al Saleh filed suit against Sargeant, Naba'a, and IOTC USA in Florida based upon the foregoing transactions regarding the fuel contracts. Following a jury trial, the trial court entered judgment in favor of Al Saleh against these defendants for $28,800,000. The trial court also entered a final "cost" judgment on February 9, 2012 in the amount of $85,489.92, with interest, and a supplemental judgment on September 16, 2013 in the amount of $3,484,753.92.

Al Saleh began efforts in Florida to collect these judgments from the defendants and entities owned or controlled by the defendants. In one proceeding, for instance, Al Saleh initiated collection efforts against BTB, relator and appellant herein, which is an entity wholly owned by Sargeant. BTB was originally a Florida limited liability company but was converted to a Texas limited liability company on June 25, 2011, two days before entry of the $28,800,000 judgment against Sargeant. In that collection proceeding, Al Saleh asserted: (1) a claim for constructive trust over BTB's primary asset, a promissory note payable for over $29,000,000 with interest, that BTB acquired in 2007 using proceeds from the fuel contracts; (2) a claim that BTB is the alter ego of Sargeant; and (3) BTB was fraudulently re-domiciled to Texas just before entry of the verdict and should be re-domiciled to Florida to allow foreclosure of Sargeant's interest under Florida law. Nevertheless, Al Saleh's collection efforts were fruitless.

### C. This Litigation

In 2014, Al Saleh domesticated the Florida judgment in the underlying court, the 319th District Court of Nueces County, Texas, as a Texas judgment. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 35.003(c) (West,

Westlaw through 2015 R.S.).[1] Al Saleh filed an agreed motion and obtained an agreed order charging Sargeant's member interest in BTB with the judgment debt. *See* TEX. BUS. ORG.CODE ANN. § 101.112 (West, Westlaw through 2015 R.S.). Al Saleh then filed a "Verified Amended Petition, Third–Party Petition, Application for Temporary Restraining Order and Injunctive Relief and Request for Appointment of Receiver" against Sargeant, Naba'a, IOTC USA, BTB, and Sargeant Marine Ltd. ("Sargeant Marine"), a corporation operating and existing in the Bahamas. According to Al Saleh's petition, the Florida judgments had not been satisfied and Sargeant "has consciously refused and systematically avoided satisfying the foreign Judgments" and "has evaded his obligations." The petition states, in part:

4. A sales transaction is scheduled to close on or about June 5, 2015 at which time Defendant BTB, and ultimately Defendant Sargeant as Defendant BTB is merely his alter ego, would ultimately receive approximately $52 million. A portion of the foregoing sum should quite clearly and justly be distributed to Plaintiff in order to completely and fully satisfy the Judgments existing in his favor. Plaintiff respectfully requests the assistance of this Court for this purpose.

5. Plaintiff immediately seeks a Temporary Restraining Order enjoining Defendants from disposing of, directing or transferring away, or in any way removing the availability of funds sufficient to satisfy Plaintiffs judgments and to direct such funds to be taken into custody by a receiver appointed by this Court. Plaintiff requests such relief given the substantial likelihood, even certainty, that such funds shall be immediately transferred to offshore accounts or accounts otherwise beyond the jurisdictional powers of this Honorable Court, by further frustrating Plaintiff's attempts to have satisfied the Judgments duly and lawfully entered in his favor.

Al Saleh's causes of action against the defendants included claims pertaining to: turnover in satisfaction of judgments, *see* TEX. CIV. PRAC. & REM.CODE ANN. § 31.002 (West, Westlaw through 2015 R.S.); an action upon a foreign judgment, *see id.* § 16.066 (West, Westlaw through 2015 R.S.); violation of the Uniform Fraudulent Transfers Act, *see* TEX. BUS. & COM.CODE ANN. § 24.001 (West. Westlaw through 2015 R.S.); and fraud and conspiracy to commit fraud. Al Saleh further alleged theories pertaining to vicarious liability and disregard of the corporate form, including allegations that Sargeant owned and operated BTB and Sargeant Marine as "mere tools or business conduits" such that they were nothing more than Sargeant's "alter egos." Al Saleh sought collection of the debt, the appointment of a receiver, damages, and a temporary restraining order and injunctive relief.

In support of his claim for relief, Al Saleh alleged and provided evidence that BTB's primary asset was a promissory note payable for over $29,000,000 "that

---

1. By filing an authenticated copy of a sister state judgment in a Texas court, the judgment holder can "domesticate" the foreign judgment. *See id.* In other words, the filed foreign judgment instantly becomes a valid and enforceable Texas judgment, as if it had been rendered by the filing court. *See Walnut Equip. Leasing Co., Inc. v. Wu,* 920 S.W.2d 285, 286 (Tex.1996) ("[W]hen a judgment creditor proceeds under the [Uniform Act], the filing of the foreign judgment comprises both a plaintiffs original petition and a final judgment."). No other pleading is required and nothing else needs to be introduced into evidence. *Wolfram v. Wolfram,* 165 S.W.3d 755, 758–59 (Tex.App.–San Antonio 2005, no pet.).

BTB acquired in 2007 using proceeds from the [f]uel [c]ontracts." Al Saleh also referenced two separate instances of litigation that he alleged supported his claims. First, in *PDVSA Petroleo S.A. v. Trigeant, Ltd., et al.,* a proceeding involving Sargeant, BTB, and others, the federal district court entered findings of fact and conclusions of law that transfer of an asphalt refinery constituted actual and constructive fraud under the Texas Uniform Fraudulent Transfer Act. *See PDVSA Petroleo S.A. v. Trigeant, Ltd.,* No. CIV.A. C–09–38, 2012 WL 3249531, at *1–16 (S.D.Tex. Aug. 7, 2012); *see also PDVSA Petroleo S.A. v. Trigeant, Ltd.,* No. 2:09–CV–00038, 2012 WL 6020036, at *1 (S.D.Tex. Dec. 3, 2012). The gist of the findings and conclusions were that Sargeant had used BTB in commission of the fraud. *See* 2012 WL 3249531, at *1–*16. The findings included, inter alia, that: Sargeant was the "sole owner and member and had full control over [BTB's] operations"; Sargeant "was the 100% owner and sole member of BTB"; Sargeant had "ultimate managerial control" over BTB; and Sargeant had "full control over BTB's operations and directed and controlled its decisions." *See id.* The federal district court entered judgment against Sargeant and BTB; however, the judgment was settled during the pendency of an appeal to the United States Fifth Circuit Court of Appeals, and the appeal was dismissed by stipulation of the parties.

Second, in *In re Trigeant Holdings, Ltd,* case no. 14–29027–EPK filed in the United States Bankruptcy Court for the Southern District, Sargeant and his family settled business disputes amongst themselves and their entities. Specifically, Sargeant and his entities, including IOTC Dubai (then domiciled in the Bahamas), BTB, and Sargeant Marine, SA. (predecessor to Sargeant Marine) entered a settlement agreement with other members of the Sargeant family and related entities. According to Al Saleh, despite having released valuable claims he had asserted in various courts against other members of the Sargeant family, Sargeant received no consideration from the settlement agreement and all proceeds of the settlement were instead paid solely to Sargeant's corporations, including over $52,000,000 to BTB. Al Saleh argued that the settlement was structured to ensure that Sargeant remained judgment-proof.

Finally, Al Saleh alleged that BTB had entered into a "Zero Coupon Promissory Note" with Sargeant Marine, a Bahamas corporation, obligating BTB to pay Sargeant Marine, Ltd. the amount of $55,580,798.96 pre-payable at any time prior to the note's maturity date.

In seeking the temporary injunction that is the subject of these proceedings, Al Saleh urged that injunctive relief was necessary to prevent Sargeant, Sargeant Marine, and BTB from transferring or moving the settlement proceeds "beyond reach." After additional briefing, amended pleadings, and discovery, the trial court granted a temporary restraining order in favor of Al Saleh. After an evidentiary hearing, the trial court granted the temporary injunction at issue, which reads in relevant part as follows:

Mohammad Anwar Farid Al Saleh, Plaintiff in the above-referenced and numbered cause ("Plaintiff"), has filed a Verified Amended Petition, Third–Party Petition, Application for Temporary Restraining Order and Injunctive Relief and Request for Appointment of Receiver ("Petition"). In connection therewith, this Court issued a Temporary Restraining Order on June 4, 2015, which was extended by further Order of this Court on June 16, 2015. Plaintiff has presented a request for a Temporary Injunc-

tion, regarding which the Court heard documentary and testimonial evidence on June 26, 2015 and on June 30, 2015.

Upon the Court's consideration of Plaintiffs Petition and the pleadings on file, the Unsworn Declaration made subject to the penalty of perjury supporting Plaintiff's Petition, and the documentary and testimonial evidence offered and received by this Court in support of the Temporary Injunction, the Court is of the opinion that Plaintiff will suffer an immediate and irreparable harm and injury if a Temporary Injunction does not issue and that Plaintiff has no adequate remedy at law. It appears from the facts set forth in such pleadings and from the evidence offered and received that Plaintiff has met the elements required for issuance of a Temporary Injunction.

Furthermore, Plaintiff has demonstrated a probable right to the relief sought against Defendants and a likelihood of success on the merits. This Court finds that, based upon the pleadings and evidence before it, Plaintiff has demonstrated a probable right to relief by demonstrating, among other things, that Plaintiff is a creditor; that Plaintiff has a claim against Defendants; that Defendant Sargeant is a debtor; that Defendant BTB is the alter ego of Defendant Sargeant; and that Defendant BTB's incurring the obligation of the January 31, 2013 Zero Coupon Promissory Note in favor of Defendant Sargeant Marine constitutes a transfer made with the intent to delay, hinder and defraud.

Moreover, Plaintiff has demonstrated a probable, imminent and irreparable harm in that, unless Defendants are immediately restrained from committing the acts described below, Defendants will commit such acts before Plaintiffs claims can be decided. Plaintiff has demonstrated herein that he will suffer probable, imminent and irreparable harm and would lack an adequate remedy at law without the Court's intervention. Plaintiff has established more than a mere fear or apprehension that such property and assets will be moved, wasted, dissipated or otherwise transferred beyond the jurisdictional reach of this or any other United States Court if not immediately restrained based upon, among other things, testimony that a significant amount of the proceeds have already been transferred by BTB.

IT IS, THEREFORE, ORDERED that Defendants Sargeant, BTB, and the officers, agents, servants, employees, attorneys, principals, members, manager and other persons in active concert or participation with them, be and hereby are, commanded forthwith to desist and refrain from using or transferring to any person or entity $21,828,446.65 or transferring such amount out of the jurisdiction of this Court, from the date of this Order until further Order of this Court.

This interlocutory appeal and original proceeding ensued. By one issue, which is the same in both cases, BTB argues that the trial court abused its discretion in utilizing a temporary injunction to freeze its assets "as security for a potential money judgment" against BTB and asserts the following:

The fundamental question in this appeal is whether the district court abused its discretion in entering an injunction freezing millions of dollars of assets of BTB Refining, LLC until trial. That question raises this issue:

Plaintiff Mohammad Farid Al Saleh has no judgment against BTB and brought this lawsuit to attempt to hold BTB liable for Al Saleh's money judgment against defendant Harry Sargeant III

under theories of alter ego and fraudulent conveyance. The district court abused its discretion in ruling that a temporary injunction was available to preserve BTB's cash as security for a potential money judgment against BTB in Al Saleh's favor.

This Court requested and received a response to the petition for writ of mandamus from Al Saleh, who has also filed a brief in the appeal. The parties have also furnished the Court with additional briefing.

## II. STANDARD OF REVIEW

■ Mandamus relief is proper to correct a clear abuse of discretion when there is no adequate remedy by appeal. *In re Conner*, 458 S.W.3d 532, 535 (Tex. 2015) (orig. proceeding); *In re Frank Motor Co.*, 361 S.W.3d 628, 630–31 (Tex.2012) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). A trial court has no discretion in applying the law to the facts or determining what the law is. *In re Frank Motor Co.*, 361 S.W.3d at 631; *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135.

■ The adequacy of an appellate remedy is determined by balancing the benefits of mandamus review against the detriments. *In re Essex Ins. Co.*, 450 S.W.3d 524, 528 (Tex.2014) (orig.proceeding); *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex.2008) (orig.proceeding). Balancing these interests, the Texas Supreme Court has held that "mandamus relief is appropriate to 'spare private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings.'" *In re Essex Ins. Co.*, 450 S.W.3d at 528 (quoting *In re Prudential*, 148 S.W.3d at 136); *see In re John G. & Marie Stella Kenedy Mem'l*

*Found.*, 315 S.W.3d 519, 523 (Tex.2010) (orig.proceeding).

Section 51.014(a)(4) of the civil practice and remedies code permits an interlocutory appeal from an order that "grants or refuses a temporary injunction." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(4) (West, Westlaw through 2015 R.S.). Appeals from interlocutory orders, when allowed by statute, are accelerated appeals. TEX.R.APP. P. 28.1. Accordingly, because BTB has an adequate remedy by appeal, we dismiss its petition for writ of mandamus.

## III. TEMPORARY INJUNCTIONS

■ "A temporary injunction is an extraordinary remedy and does not issue as a matter of right." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex.2002); *see Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex.1993); *Frontera Generation Ltd. P'ship v. Mission Pipeline Co.*, 400 S.W.3d 102, 108 (Tex.App.–Corpus Christi 2012, no pet.) (combined appeal & orig. proceeding). The purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru*, 84 S.W.3d at 204; *Cameron Int'l Corp. v. Guillory*, 445 S.W.3d 840, 845 (Tex.App.–Houston [1st Dist.] 2014, no pet.); *Reyes v. Burrus*, 411 S.W.3d 921, 924 (Tex.App.–El Paso 2013, pet. denied). The status quo is "the last, actual, peaceable, non-contested status which preceded the pending controversy." *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004) (orig.proceeding) (quoting *Janus Films, Inc. v. City of Ft. Worth*, 163 Tex. 616, 358 S.W.2d 589, 589 (Tex.1962) (per curiam)).

■ To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a

probable, imminent, and irreparable injury in the interim. *Butnaru,* 84 S.W.3d at 204; *Schmidt v. Richardson,* 420 S.W.3d 442, 445 (Tex.App.–Dallas 2014, no pet.).[2] "An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by a certain pecuniary standard." *Butnaru,* 84 S.W.3d at 204. The temporary injunction applicant bears the burden of production to offer some evidence of each of these elements. *In re Tex. Natural Res. Conservation Com'n,* 85 S.W.3d 201, 204 (Tex.2002) (orig.proceeding); *Cameron Int'l Corp.,* 445 S.W.3d at 845. The applicant is not required to establish that it ultimately will prevail at trial, only that it is entitled to preservation of the status quo pending trial on the merits. *Walling,* 863 S.W.2d at 58; *Frontera Generation Ltd. P'ship,* 400 S.W.3d at 108.

The Texas Rules of Civil Procedure require that an order granting a temporary injunction set the cause for trial on the merits and fix the amount of security to be given by the applicant. *See* Tex.R. Civ. P. 683, 684. These procedural requirements are mandatory, and an order granting a temporary injunction that does not meet them is subject to being declared void and dissolved. *See Qwest Commc'ns Corp. v. AT & T Corp.,* 24 S.W.3d 334, 337 (Tex.2000); *InterFirst Bank San Felipe,*

*N.A. v. Paz Constr. Co.,* 715 S.W.2d 640, 641 (Tex.1986); *Yardeni v. Torres,* 418 S.W.3d 914, 918 (Tex.App.–El Paso 2013, no pet.)

An interlocutory order granting or denying a temporary injunction is "within the trial court's sound discretion." *Butnaru,* 84 S.W.3d at 204; *see Walling,* 863 S.W.2d at 57; *In Estate of Sheshtawy,* No. 14–14–00515–CV, 478 S.W.3d 82, 84–85, 2015 WL 5728125, at *2 (Tex.App.–Houston [14th Dist.] Sept. 29, 2015, no. pet.); *Reyes,* 411 S.W.3d at 924; *James v. Easton,* 368 S.W.3d 799, 805 (Tex.App.–Houston [14th Dist.] 2012, pet. denied). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable it amounts to a clear and prejudicial error of law or it clearly fails to correctly analyze or apply the law. *In re Olshan Found. Repair Co., LLC,* 328 S.W.3d 883, 888 (Tex.2010) (orig.proceeding); *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992). A trial court abuses its discretion in granting or denying a temporary injunction when it misapplies the law to the established facts. *INEOS Grp. Ltd. v. Chevron Phillips Chem. Co.,* 312 S.W.3d 843, 848 (Tex.App.–Houston [1st Dist.] 2009, no pet.).

We review the evidence submitted to the trial court in the light most favorable to its ruling, drawing all legitimate inferences from the evidence, and defer-

---

2. To obtain injunctive relief in the pre-trial context, the applicant must plead and prove: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 204 (Tex.2002); *Emeritus Corp. v. Ofczarzak,* 198 S.W.3d 222, 226–27 (Tex.App.–San Antonio 2006, no pet.). However, "the first two elements that must be established to obtain a pre-trial temporary injunction are necessarily met when a judgment has been rendered against a defendant.["] *Emeritus Corp.,* 198 S.W.3d at 227.

The standard for injunctive relief to preserve assets after judgment is different than the "more general 'probable, imminent and irreparable injury' that is applicable in a variety of pre-trial contexts." *Id.* In the post-judgment context, the question is only "whether the judgment debtor is likely to dissipate or transfer its assets to avoid satisfaction of the judgment." *Id.* Evidence of the actual dissipation or transfer of assets is not necessary to meet this standard. *Id.* at 228; *see also Miga v. Jensen,* No. 02–11–00074–CV, 2012 WL 745329, at *7 (Tex.App.–Fort Worth Mar. 8, 2012, no pet.) (mem.op.).

ring to the trial court's resolution of conflicting evidence. *Butnaru,* 84 S.W.3d at 204; *Cameron Int'l Corp.,* 445 S.W.3d at 845. When, as here, the trial court does not make findings of fact or conclusions of law, we must uphold the court's order on any legal theory supported by the record. *City of McAllen v. McAllen Police Officers Union,* 221 S.W.3d 885, 893 (Tex.App.–Corpus Christi 2007, pet. denied). However, our review of the trial court's decision is limited to the validity of its temporary injunction order; and we do not consider the merit of the underlying case. *See Davis v. Huey,* 571 S.W.2d 859, 861 (Tex. 1978); *Cameron Int'l Corp.,* 445 S.W.3d at 845; *Frontera Generation Ltd. P'ship,* 400 S.W.3d at 108; *Dallas/Ft. Worth Int'l Airport Bd. v. Ass'n of Taxicab Operators, USA,* 335 S.W.3d 361, 364 (Tex.App.–Dallas 2010, no pet.).

## IV. ANALYSIS

The same issue is presented in the appeal and the original proceeding. BTB contends that the trial court has abused its discretion in entering an injunction freezing millions of dollars of BTB's assets until trial. BTB argues that Al Saleh has no judgment against BTB and brought this lawsuit to attempt to hold BTB liable for Al Saleh's money judgment against Sargeant under theories of alter ego and fraudulent conveyance.[3] BTB thus contends that the district court abused its discretion in ruling that a temporary injunction was available to preserve BTB's cash as security for a potential money judgment against BTB. In response, Al Saleh argues that injunctive relief is appropriate to prevent the fraudulent dissipation of assets and that an alter ego finding is not equivalent to an attempt to satisfy a judgment "out of" an LLC membership interest. As stated previously, the final judgments on the Florida verdict were rendered against Sargeant, Naba'a, and IOTC USA.

The gravamen of BTB's argument is that the trial court issued an "improper prejudgment asset freezing injunction." BTB argues that a prejudgment attachment of its property in an action for money damages is barred by the rule established by the United States Supreme Court in *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308, 119 S.Ct. 1961, 144 L.Ed.2d 319 (1999). In *Grupo,* the Supreme Court held that an asset-freezing preliminary injunction is an equitable device that may not issue to prevent the dissipation of assets pending adjudication of a claim for legal damages. *Id.* at 333, 119 S.Ct. 1961 ("[W]e hold that the District Court had no authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of respondents' contract claim for money damages."). However, the Court's holding was limited to cases in which only monetary damages are requested and does not apply where equitable relief is sought. *Id.* at 324–25, 119 S.Ct. 1961 (noting that "preliminary relief available in a suit seeking equitable relief has nothing to do with the preliminary relief available in a creditor's bill seeking ... a legal debt"); *see Deckert v. Independence Shares Corp.,* 311 U.S. 282, 288, 61 S.Ct. 229, 85 L.Ed. 189 (1940). Further, the Court stated that its ruling did not apply to cases in which a fraudulent transfer is alleged. *Grupo,* 527 U.S. at 324 n.7, 119 S.Ct. 1961 ("Several States have adopted the Uniform Fraudulent Conveyance Act ... which has been interpreted as confer-

---

**3.** We note that BTB does not attack the factual or legal sufficiency of the evidence in this case.

ring on a nonjudgment creditor the right to bring a fraudulent conveyance claim.... Because this case does not involve a claim of fraudulent conveyance, we express no opinion on the point.").[4]

 BTB contends that this case does not fall within the "equitable" exception referenced in *Grupo* because Al Saleh does not seek equitable relief. However, Al Saleh seeks, for instance, a temporary injunction and the appointment of a receiver. "An applicant for a temporary injunction seeks extraordinary equitable relief." *Camp v. Shannon*, 162 Tex. 515, 348 S.W.2d 517, 519 (1961); *see El Tacaso, Inc. v. Jireh Star, Inc.*, 356 S.W.3d 740, 743 (Tex.App.–Dallas 2011, no pet.); *Wilson N. Jones Mem'l Hosp. v. Huff*, 188 S.W.3d 215, 218 (Tex.App.–Dallas 2003, pet. denied). Similarly, the rules of equity govern all matters relating to the appointment of a receiver. *See Huston v. F.D.I.C.*, 800 S.W.2d 845, 849 (Tex.1990). However, even if we were to construe the equitable relief that Al Saleh seeks as being merely in aid of a legal claim for a money judgment, as in *Grupo*, as opposed to equitable relief generally, we would nevertheless need to address the remaining exception noted in *Grupo*—the fraudulent conveyance exception.

 BTB's argument—that *Grupo* bars a temporary injunction in this case— fails because Al Saleh sued Sargeant and BTB alleging a fraudulent conveyance un-

der the Texas version of the Uniform Fraudulent Conveyance Act, which is known as the Texas Uniform Fraudulent Transfer Act ("TUFTA"). *See* Tex. Bus. & Com.Code Ann. §§ 24.001–.013 (West, Westlaw through 2015 R.S.); *Altus Brands II, LLC v. Alexander*, 435 S.W.3d 432, 441–42 (Tex.App.–Dallas 2014, no pet.); *Jackson Law Office, P.C. v. Chappell*, 37 S.W.3d 15, 25 (Tex.App.–Tyler 2000, pet. denied). Accordingly, *Grupo* does not control our analysis, *see* 527 U.S. at 333, 119 S.Ct. 1961, and our examination of the validity of the temporary injunction in this case proceeds under TUFTA.

 TUFTA was enacted to establish uniformity among the states with respect to fraudulent transfers. *See* Tex. Bus. & Com.Code Ann. § 24.012; *Challenger Gaming Solutions, Inc. v. Earp*, 402 S.W.3d 290, 293 (Tex.App.–Dallas 2013, no pet.). TUFTA is intended to prevent debtors from defrauding creditors by moving assets out of reach. *Altus Brands II, LLC*, 435 S.W.3d at 441; *see, e.g., Challenger Gaming Solutions, Inc.*, 402 S.W.3d at 293; *Arriaga v. Cartmill*, 407 S.W.3d 927, 931 (Tex.App.–Houston [14th Dist.] 2013, no pet.); *Yokogawa Corp. of Am. v. Skye Int'l Holdings, Inc.*, 159 S.W.3d 266, 269 (Tex.App.–Dallas 2005, no pet.). "[T]he focus of a [TUFTA] claim is to ensure the satisfaction of a creditor's claim when the elements of a fraudulent transfer are proven." *Challenger Gaming Solutions*, 402 S.W.3d at 298. Accordingly,

---

4. *See also Takiguchi v. MRI Intern., Inc.*, 611 Fed.Appx. 919, 921 (9th Cir.2015) (holding that the *Grupo* rule applies only in cases seeking exclusively legal damages, thus a preliminary injunction may only freeze assets for the potential equitable recovery); *In re 2920 ER, L.L.C.*, 607 Fed.Appx. 349, 355 (5th Cir.2015) (stating that federal law authorizes the prejudgment freezing of assets if the relief requested is "traditionally exercised by courts of equity" and if the court follows the procedural requirements for a preliminary injunc-

tion); *Tiffany (NJ) LLC, Tiffany & Co. v. China Merchants Bank*, 589 Fed.Appx. 550, 552 (2d Cir.2014) (construing *Grupo* and concluding that the court was careful not to abrogate the settled principle that in an action for equitable remedies, courts have the inherent authority to issue prejudgment asset freezes.); *see also Netsphere, Inc. v. Baron*, 703 F.3d 296, 309 (5th Cir.2012) (discussing *Grupo* and the distinction between equitable relief in aid of a legal claim for a money judgment and equitable relief generally).

consistent with its purpose, TUFTA provides a comprehensive statutory scheme through which a creditor may seek recourse for a fraudulent transfer of assets or property. *Altus Brands II, LLC,* 435 S.W.3d at 441; *Challenger Gaming Solutions,* 402 S.W.3d at 293; *Arriaga,* 407 S.W.3d at 932; *Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd.,* 80 S.W.3d 601, 607 (Tex.App.–Flouston [1st Dist.] 2002, no pet.). In this regard, TUFTA provides equitable relief. *See Altus Brands II, LLC,* 435 S.W.3d at 446; *Arriaga,* 407 S.W.3d at 933; *see Citizens Nat. Bank of Tex. v. NXS Constr., Inc.,* 387 S.W.3d 74, 79 (Tex.App.–Houston [14th Dist.] 2012. Further, a fraudulent transfer under TUFTA is a tort. *Challenger Gaming Solutions, Inc.,* 402 S.W.3d at 295–96; *In re Tex. Am. Express, Inc.,* 190 S.W.3d 720, 725 (Tex.App.–Dallas 2005, orig. proceeding).

TUFTA delineates what types of transfers and obligations are fraudulent, enumerates the remedies available to a creditor, prescribes the measure of liability of a transferee, and lists the defenses and protections afforded a transferee. *Altus Brands II, LLC,* 435 S.W.3d at 441; *Challenger Gaming Solutions,* 402 S.W.3d at 294. The judgment creditor has the burden to prove the fraudulent transfer by a preponderance of the evidence. *Altus Brands II, LLC,* 435 S.W.3d at 441; *Doyle v. Kontemporary Builders, Inc.,* 370 S.W.3d 448, 453 (Tex.App.–Dallas 2012, pet. denied). Under TUFTA, the trial court may find substantial likelihood of success on the merits when it is "presented with evidence of intent to defraud the creditor." *See Tanguy v. Laux,* 259 S.W.3d 851, 858 (Tex.App.–Houston [1st Dist.] 2008, no pet.); *Tel. Equip. Network, Inc.,* 80 S.W.3d at 609; *see also Janvey v. Alguire,* 647 F.3d 585, 596 (5th Cir.2011).

Actual intent to defraud creditors ordinarily is a fact question. *Qui Phuoc Ho v. MacArthur Ranch, LLC,* 395 S.W.3d 325, 328 (Tex.App.–Dallas 2013, no pet.); *Walker v. Anderson,* 232 S.W.3d 899, 914 (Tex.App.–Dallas 2007, no pet.). However, circumstantial proof may be used to prove fraudulent intent because direct proof is often unavailable. *Qui Phuoc Ho,* 395 S.W.3d at 328; *Doyle,* 370 S.W.3d at 454. Facts and circumstances that may be considered in determining fraudulent intent include a nonexclusive list of "badges of fraud" prescribed by the legislature in section 24.005(b). *See* TEX. BUS. & COM.CODE ANN. § 24.005(b); *Qui Phuoc Ho,* 395 S.W.3d at 328. These include, for example, transfer to an insider, suit or threatened suit against the debtor before the transfer, transfer of substantially all of the debtor's assets, the debtor's insolvency at the time of transfer or shortly afterwards, concealment of the transfer, and whether the consideration the debtor received was reasonably equivalent to the asset transferred. *See* TEX. BUS. & COM. CODE ANN. § 24.005(b). The presence of several of these factors is sufficient to support a fact finder's reasonable inference of fraudulent intent. *Qui Phuoc Ho,* 395 S.W.3d at 328; *Mladenka v. Mladenka,* 130 S.W.3d 397, 405 (Tex.App.–Houston [14th Dist.] 2004, no pet.).

To be entitled to recovery under TUFTA, a plaintiff must establish that he is a "creditor." Under TUFTA, a "creditor" is "any person who has a claim." *See* TEX. BUS. & COM.CODE ANN. § 24.002(4). "Claim" is broadly defined as "a right to payment or property, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured or unsecured." *Id.* § 24.002(3). Section 24.002(12) of TUFTA defines "transfer" as meaning "every mode, direct or indirect, absolute or conditional, voluntary or invol-

untary, of disposing of or parting with an asset or an interest in an asset," including "payment of money, release, lease, and creation of a lien or other encumbrance." *Id.* § 24.002(12). Section 24.006(a) states:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

*Id.* § 24.006(a). "Value" is given for a transfer or obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied. *Id.* § 24.004(a). A "[r]easonably equivalent value" includes a transfer or obligation that is within the range of values for which the transferor would have sold the asset in an arm's length transaction. *Id.* § 24.004(d).

■■■■■ "The fundamental remedy for a creditor who establishes a fraudulent transfer is recovery of the property from the person to whom it has been transferred." *Challenger Gaming Solutions, Inc.*, 402 S.W.3d at 294. Section 24.008, titled "Remedies of Creditors," states that a creditor may obtain, "subject to applicable principles of equity and in accordance with applicable rules of civil procedure ... an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property ... [or] any other relief the circumstances may require." Tex. Bus. & Com.Code Ann. § 24.008. "This last option is quite broad." *Airflow Houston, Inc. v. Theriot*, 849 S.W.2d 928, 934 (Tex.App.–Houston [1st Dist.] 1993, no writ). Also, a creditor who has obtained a judgment on a claim

against the debtor may levy execution on the asset transferred or its proceeds. *Id.*; *see Hahn v. Love*, 394 S.W.3d 14, 29–30 (Tex.App.–Houston [1st Dist.] 2012, pet. denied).

■■■■ TUFTA provides for both injunctions and attachments. *See* Tex. Bus. & Com.Code § 24.008(a)(2) (attachment); *id.* § 24.008(a)(3)(A) (injunction). A claim for fraudulent transfer under Texas law contemplates the issuance of a preliminary injunction. *Tel. Equip. Network, Inc.*, 80 S.W.3d at 610; *see Janvey*, 647 F.3d at 602–03; *see also Blackthorne v. Bellush*, 61 S.W.3d 439 (Tex.App.–San Antonio 2001, no pet.) (noting that under TUFTA pre-judgment "interim injunctive relief is an available remedy to a fraudulent transfer for which the claimant asserts an equitable interest" to protect the status quo pending trial). Specifically, the claimant may obtain an injunction against further disposition of the asset transferred or of other property. *Id.*; *see* Tex. Bus. & Com. Code Ann. § 24.008(a)(3).

■■■■ Section 24.009, entitled "Defenses, Liability, and Protection of Transferee," provides that when a transfer is voidable, the creditor may recover judgment for the value of the asset transferred, and the judgment may be rendered against "the first transferee of the asset or the person for whose benefit the transfer was made" or "any subsequent transferee other than a good faith transferee who took for value or from any subsequent transferee." Tex. Bus. & Com.Code Ann. § 24.009(b). Thus, good faith is an affirmative defense to a fraudulent transfer claim. *See Hahn*, 394 S.W.3d at 30.

BTB contends that TUFTA does not apply in this case because, according to BTB, TUFTA requires the plaintiff to establish that he is a creditor of the transferor—here BTB. BTB reasons that Al Sa-

leh is not a creditor of BTB because he has no judgment against that entity. In so arguing, BTB relies on *Davis v. Howard,* 436 S.W.2d 225 (Tex.Civ.App.–Austin 1968, no writ) and *United States v. Chapman,* 756 F.2d 1237 (5th Cir.1985).

According to BTB, in *Davis v. Howard,* the court affirmed the dismissal of a plaintiffs fraudulent transfer claim where the plaintiff was a creditor of the transferor's husband, not a creditor of the transferor. We question BTB's analysis of this case. *Davis* was brought under the common law, not a fraudulent transfer statute. *See id.* at 227–31. In *Davis,* a judgment creditor alleged that horses upon which he had levied execution belonged to the judgment debtor, and the claimant, who was the grandmother of the judgment debtor's wife, alleged that she owned the horses, not the debtor, and had owned them prior to the time execution was levied. *Id.* The trial court set aside a default judgment entered against the grandmother and the judgment creditor appealed. *Id.* The appellate court held that the default judgment was properly set aside because, among other reasons, evidence showed that the grandmother owned the horses, had owned them prior to the time execution was levied and had purchased them from the judgment debtor's wife, who had owned them as separate property and had purchased them with separate, not community, funds. *Id.*

BTB similarly argues that *Chapman* stands for the proposition that TUFTA afford no remedy to a person who was not a creditor of the transferor at the time of the transaction. In *Chapman,* the United States, which had obtained judgment against taxpayer for unpaid taxes, sought recognition of a tax lien upon residential property, title to which was held in the name of the taxpayer's daughter. *Chapman,* 756 F.2d at 1239–44. In *Chapman,*

the particular issue concerned whether a transfer intended to defraud creditors is void under TUFTA as to a creditor whose debt arises after the transfer has been made. *Id.* The court stated that, as a general rule, the statutory provisions afford no remedy to a person who was not a creditor of the transferor at the time of the transaction. *Id.* The court further stated, however, a different rule applies when the transfer is made with fraudulent intent at the time of transfer to evade future liabilities to a subsequent creditor, and in such instance the transfer is void as to the subsequent creditor. *Id.* Thus, the court held that the taxpayer's transfer of real property to his daughter was made with the intent to hinder or defraud the United States in its collection of taxes, and that therefore the United States could enforce its tax lien against the property. *Id.* BTB neither acknowledges nor distinguishes the actual rule applied in *Chapman.*

We conclude that neither *Davis* nor *Chapman* are applicable in this case. Under the express terms of TUFTA, Al Saleh is a "creditor" because he "has a claim." *See* Tex. Bus. & Com.Code Ann. § 24.002(4). Under TUFTA, the claim can be equitable and need not be matured or reduced to judgment. *Id.* § 24.002(3). Further, Al Saleh's claim need not be against the debtor only, here Sargeant, but can also be against the transferee of an asset or the person for whose benefit the transfer was made. *See Id.* §§ 24.008, 24.009; *Mack v. Newton,* 737 F.2d 1343, 1361 (5th Cir.1984) (addressing TUFTA's predecessor, the Uniform Fraudulent Conveyance Act). TUFTA expressly provides for an injunction under the circumstances and facts alleged, and the trial court exercised its discretion to grant that injunction.

Finally, as stated previously, BTB contends that the trial court lacked discretion to issue a temporary injunction with-

out a precursor judgment because it was not a party to the Florida judgments. In support of its contention, BTB cites *Reyes v. Burrus*, 411 S.W.3d 921, 924 (Tex.App.–El Paso 2013, pet. denied); *Nowak v. Los Patios Investors, Ltd.*, 898 S.W.2d 9, 11 (Tex.App.–San Antonio 1995, no writ); *Harper v. Powell*, 821 S.W.2d 456, 457 (Tex.App.–Corpus Christi 1992, no writ); *Lane v. Baker*, 601 S.W.2d 143, 145 (Tex. Civ.App.–Austin 1980, no writ); and *Frederick Leyland & Co. v. Webster Bros. & Co.*, 283 S.W. 332, 335 (Tex.Civ.App.–Dallas 1926), writ dism'd w.o.j., 115 Tex. 511, 283 S.W. 1071 (1926). These cases generally reverse temporary injunctions freezing assets unrelated to the subject matter of the suit.

Under these cases, an adequate remedy at law exists and injunctive relief is improper where any potential harm may be "adequately cured by monetary damages." *Ballenger v. Ballenger*, 694 S.W.2d 72, 77 (Tex.App.–Corpus Christi 1985, no writ); *see Reyes*, 411 S.W.3d at 924. "A corollary to this general rule is the principle that a temporary injunction cannot be used to secure the legal remedy of damages by freezing assets unrelated to the subject matter of the suit." *Reyes*, 411 S.W.3d at 924; *see, e.g., Nowak*, 898 S.W.2d at 11; *Harper*, 821 S.W.2d at 457; *Lane*, 601 S.W.2d at 145; *Frederick Leyland & Co.*, 283 S.W. at 335. However, there are several exceptions to this general rule. *Reyes*, 411 S.W.3d at 925–26; *see also Nowak*, 898 S.W.2d at 11 (collecting and discussing cases regarding such injunctions are permissible). For example, it may be permissible to freeze assets unrelated to the subject matter of the suit when the assets would be subject to a pleaded equitable remedy. *See Deckert v. Indep. Shares Corp.*, 311 U.S. 282, 289, 61 S.Ct. 229, 85 L.Ed. 189 (1940) (upholding a temporary injunction ren-

dered to restrain the transfer of assets where movant sought equitable relief, including a request for an accounting, appointment of a receiver, an injunction, and restitution); *see also Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 45 (1st Cir. 1986) (upholding an injunction where debtor refused to set aside funds to pay breach of contract claim); *Tex. Indus. Gas v. Phoenix Metallurgical Corp.*, 828 S.W.2d 529 (Tex.App.–Houston [1st Dist.] 1992, no writ) (concluding that the trial court erred in denying an injunction enforcing a contractual provision pending trial); *Surko Enterprises Inc. v. Borg–Warner*, 782 S.W.2d 223 (Tex.App.–Houston [1st Dist.] 1989, no writ) (upholding an injunction issued to preserve collateral securing a note that the plaintiff sought to collect).

The cases cited by BTB do not control the analysis in this case because: (1) Al Saleh is bringing claims under TUFTA, which expressly provides that a plaintiff may obtain an injunction against further disposition of "the asset transferred or of other property," *see* Tex. Bus. & Com.Code Ann. § 24.008(a)(3); *Tel. Equip. Network, Inc.*, 80 S.W.3d at 610; and (2) Al Saleh has presented evidence from which the trial court may have concluded that BTB's assets were related to the subject of the suit, specifically, Al Saleh's affidavit affirmatively links BTB's assets, including the promissory note with Sargeant Marine, to the funds at issue in the Florida dispute and which are the subject of the already-obtained Florida judgment.

## V. Conclusion

As stated previously, we dismiss the petition for writ of mandamus in cause number 13–15–00395–CV on grounds that BTB possesses an adequate remedy by appeal. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(4); Tex.R.App. P. 28.1.

In the appeal in cause number 13–15–00327–CV, on October 28, 2015, after full briefing by the parties, Sargeant filed a motion to dismiss his appeal only, thereby leaving intact the appeal filed by BTB. Sargeant did not provide a rationale for the requested dismissal of his appeal. Al Saleh filed a response in opposition to the motion to dismiss on grounds that BTB and Sargeant "legally are one and the same entity." *See* Tex.R.App. P. 42.1(a) (allowing for the voluntary dismissal of an appeal "unless disposition would prevent a party from seeking relief to which it would otherwise be entitled"). Given the subject of this appeal and the timing of Sargeant's motion to dismiss, we deny Sargeant's motion to dismiss his appeal. We affirm the temporary injunction.